[No. 34411-4-II. Division Two. June 26, 2007.]

DRAGONSLAYER, INC., ET AL., *Appellants*, v. THE WASHINGTON STATE GAMBLING COMMISSION, *Respondent*.

---

434

436

*Jennifer Kampsula* (of *Kell Alterman & Runstein, LLP*) (*Thomas R. Rask*, of counsel), for appellants.

*Robert M. McKenna, Attorney General*, and *H. Bruce Marvin, Assistant*, for respondent.

*Frank L. Miller* and *David A. Malone* on behalf of Recreational Gaming Association, amicus curiae.

¶1 Penoyar, J. — Dragonslayer, Inc., and MT&M Gaming, Inc., two house-banked cardrooms, appeal from the trial court's denial of their motion for an injunction to block public disclosure of their audited financial statements. Washington's public disclosure act (PDA) provides that governmental agencies shall make "public records" available for public inspection. Ch. 42.56 RCW. Dragonslayer, MT&M, and amicus curiae the Recreational Gaming Association, argue that the financial statements do not meet the "public documents" definition and that, even if they are "public documents," they are exempt from disclosure under RCW 42.56.270(10). Also, they assert that the financial statements are exempt from the PDA because they contain "trade secrets." We remand to the trial court to determine if the financial statements are related to the Washington State Gambling Commission's (Commission) performance of its governmental functions and thus are "public records." We also remand for a determination of whether the financial statements are or contain "trade secrets" and are thus partially or completely exempt from disclosure. We reverse and remand.

## FACTS

¶2 The Commission licenses, regulates, and monitors gambling activities in Washington and enforces Washington's gambling laws and regulations. It is responsible for keeping the "criminal element" out of gambling and for promoting social welfare by limiting the nature and scope of gambling activities through strict regulation and control. RCW 9.46.010. George Teeny owns two "house banked card rooms": Dragonslayer, Inc., and MT&M Gaming, Inc. Clerk's Papers (CP) at 83. They are located in LaCenter, Washington and are subject to licensure, regulation, and monitoring by the Commission.

¶3 Dragonslayer and MT&M are required under WAC 230-40-823 to file annual audited financial statements with the Commission that contain information about their private business operations. An independent certified public accountant firm prepared the financial statements and Dragonslayer and MT&M submitted them to the Commission.

¶4 Edward Fleisher was involved in business negotiations with Dragonslayer and MT&M and he filed a public records request, asking the Commission to disclose "[c]opies of the most recent audited financial statements filed by the four house[-]banked card rooms in LaCenter, Washington." CP at 6. The Commission notified Dragonslayer and MT&M and indicated that if they did not object, the Commission would release the financial statements to Fleisher. Dragonslayer and MT&M did oppose the disclosure and filed for an injunction to stop the Commission from releasing the statements to Fleisher. They first obtained a temporary restraining order and then filed for a permanent injunction.

¶5 The trial court held oral arguments on the motion and conducted an in camera review of the financial statements. Dragonslayer and MT&M argued that the financial reports were not public records because they contained private, confidential information regarding the cardrooms' business

operations, and did not contain any information regarding governmental functions. Dragonslayer and MT&M also asserted that their financial statements contained financial information related to maintaining their gambling license with the Commission and that the statements were therefore exempt under RCW 42.56.270(10) (formerly RCW 42.17.310(1)(tt)).

¶6 The Commission asserted that the financial statements were public records because they related to a governmental function and that the financial statements were not exempt because they were not a part of the cardrooms' licensing process. The Commission asserted that the PDA's definition of "public records" must be broadly construed, and that the financial statements were public records because state law required Dragonslayer and MT&M to prepare the financial statements.

¶7 The trial court agreed with the Commission and did not issue an injunction. The court found that the financial statements were public records because they related to the Commission's regulatory functions as a public, governmental agency. It found that the statements did not contain financial information related to Dragonslayer and MT&M's gambling license and were therefore not exempt. The court considered the parties' oral argument, pleadings, and affidavits in reaching its decision; it did not hear any testimony and did not conduct an evidentiary hearing. Dragonslayer and MT&M now appeal.

## ANALYSIS

I.  STANDARD OF REVIEW AND BURDEN OF PROOF UNDER THE PDA

¶8 If an agency intends to disclose records to a requester under the PDA, an interested third party may object and seek judicial intervention to prevent disclosure. *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 34-35, 769 P.2d 283 (1989). In this situation, the objector

may proceed to prevent disclosure under RCW 42.56.540[1] (formerly RCW 42.17.330). Importantly, this section applies only to "[t]he examination of any specific *public record.*" RCW 42.56.540 (emphasis added). In a proceeding brought under this injunction statute, the party seeking to prevent disclosure, here Dragonslayer and MT&M, has the burden to prove that the public record should not be disclosed. *Spokane Police Guild*, 112 Wn.2d at 35. However, this burden of proof applies only when a party seeks to disclose a public record. Therefore, the initial inquiry is whether the financial statements meet the definition of "public record." RCW 42.56.540.

¶9 Here, the trial court placed the burden of proof on Dragonslayer and MT&M to establish that an injunction was necessary to prevent disclosure. Under RCW 42.56.540, this was proper as long as the financial statements were in fact public records. Once the threshold inquiry of whether a document is a "public record" is met, then the burden to prove that an exemption applies is properly placed on the party seeking to prevent disclosure. RCW 42.56.540.

¶10 Our review of actions under the PDA and the injunction statute is de novo. RCW 42.56.550; *Spokane Police Guild*, 112 Wn.2d at 35. Where the record consists only of affidavits, memoranda of law, other documentary evidence, and where the trial court has not seen or heard testimony requiring it to assess the witnesses' credibility or competency, we are not bound by the trial court's factual

---

[1] RCW 42.56.540 provides:

The examination of any specific public record *may be enjoined if,* upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, *the superior court* for the county in which the movant resides or in which the record is maintained, *finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.* An agency has the option of notifying persons named in the record or to whom a record specifically pertains, that release of a record has been requested. However, this option does not exist where the agency is required by law to provide such notice.

(Emphasis added.)

findings and stand in the same position as the trial court. *Spokane Police Guild*, 112 Wn.2d at 35-36; *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252-53, 884 P.2d 592 (1994) (*PAWS*).

## II. THE POLICY OF THE PDA AND DEFINITION OF "PUBLIC RECORDS"

¶11 The Recreational Gaming Association filed an amicus curiae brief in response to Dragonslayer and MT&M's appeal to this court and asserted that audited financial statements do not meet the PDA's threshold inquiry because they are not public records. The Commission responded that Dragonslayer's and MT&M's audited financial statements are public records because they contain information that the Commission reviews, uses, and retains for its enforcement purposes and because they contain information that the Commission uses to educate the public about its operations. Also, the Commission urged us to dismiss the Gaming Association's argument because Dragonslayer and MT&M do not raise this issue and it was raised only by amicus.

¶12 Dragonslayer and MT&M argued that the financial statements did not meet the "public records" definition at trial court. This issue was therefore not *first* raised by amicus. Appellate courts will not usually decide an issue raised only by amicus, but may choose to do so. *See Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997). We choose to address the PDA's definition of public records because this issue may arise again and it is in the interests of judicial economy for us to address it here.

¶13 The PDA's definition of public records requires us to interpret the statutory language. The fundamental objective of statutory construction is to ascertain and carry out the legislature's intent. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). We have accepted various tools of statutory construction, including legislative history and administrative interpretation. *Rozner*, 116

Wn.2d at 347. We will also resort to a dictionary meaning to assist in interpretation. *Dawson v. Daly*, 120 Wn.2d 782, 791, 845 P.2d 995 (1993).

■ ¶14 The PDA is a strongly worded mandate for broad disclosure of public records. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The act was designed to provide open access to governmental activities. *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997). It requires agencies to disclose any public record upon request, subject to very specific exceptions. RCW 42.56-.070(1).

■ ¶15 The PDA was passed by popular initiative. Laws of 1973, ch. 1, § 1 (Initiative 276, approved Nov. 7, 1972). The stated purpose of the act is to preserve the tenets of representative government: the sovereignty of the people and the accountability to the people of public officials and institutions:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy.

RCW 42.56.030; *PAWS*, 125 Wn.2d at 251. Our Supreme Court has emphasized the PDA's importance:

> Achieving an informed citizenry is a goal sometimes counterpoised against other important societal aims. Indeed, as the act recognizes, society's interest in an open government can conflict with its interest in protecting personal privacy rights and with the public need for preserving the confidentiality of criminal investigatory matters, among other concerns. Though tensions among these competing interests are characteristic of a democratic society, their resolution lies in providing a workable formula which encompasses, balances and appropriately protects all interests, while placing emphasis on responsible disclosure. *It is this task of accommodating opposing concerns,*

*with disclosure as the primary objective, that the state freedom of information act seeks to accomplish.*

*Spokane Police Guild,* 112 Wn.2d at 33-34 (emphasis added).

¶16 The determination of whether a document is a "public record" is critical for the PDA's purposes because the act applies only to public records. *Oliver v. Harborview Med. Ctr.,* 94 Wn.2d 559, 564 n.1, 618 P.2d 76 (1980); *Smith v. Okanogan County,* 100 Wn. App. 7, 11, 994 P.2d 857 (2000). A "public record" is

> "[1] any writing [2] containing information related to the conduct of government or the performance of any governmental or proprietary function [3] prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics."

*Oliver,* 94 Wn.2d at 565; RCW 42.17.020(41). All three elements of this three-prong test must be satisfied for a record to be a public record. *See Oliver,* 94 Wn.2d at 565.

¶17 Dragonslayer and MT&M are required by WAC 230-40-823 to "prepare financial statements covering all financial activities of the licensee's establishment for each business year." Clearly, the financial statements in this case meet the first and third prongs because they are (1) in writing and (3) are retained by the Commission pursuant to WAC 230-40-823. It is not clear, however, that the statements meet the second prong and contain "information related to the conduct of government or the performance of any governmental or proprietary function." RCW 42.17.020(41). We broadly interpret the second element of the public record test to allow disclosure. *Confederated Tribes of Chehalis Reservation v. Johnson,* 135 Wn.2d 734, 746-47, 958 P.2d 260 (1998).

¶18 In *Concerned Ratepayers Ass'n v. Public Utility District No. 1 of Clark County,* 138 Wn.2d 950, 983 P.2d 635 (1999), the Washington Supreme Court allowed public disclosure of a document describing a turbine generator's technical specifications. The document was referenced in a

project concerning construction of a power generating facility. Concerned citizens filed a public disclosure request for the document because they wanted to review the document to determine whether the facility would be capable of generating amounts of power that would require a public vote. *Concerned Ratepayers*, 138 Wn.2d at 953. The court held that the document was used by the public utility district and allowed disclosure because a nexus existed between the information and the public agency's decision-making process. It stated, "the information relates not only to the conduct or performance of the agency or its proprietary function, but is also a relevant factor in the agency's action." *Concerned Ratepayers*, 138 Wn.2d at 960-61. It explained:

> [M]ere reference to a document that has no relevance to an agency's conduct or performance may not constitute "use," but information that is reviewed, evaluated, or referred to and has an impact on an agency's decision-making process would be within the parameters of the [PDA].

*Concerned Ratepayers*, 138 Wn.2d at 961.

¶19 The legislative intent of the PDA is to require public access to information concerning the government's conduct. The trial court here made almost no factual findings as to how the financial statements were related to the government's conduct or the Commission's decision-making process. The court found from Mr. Day's statement that "the requested records relate to the regulatory functions of the Gambling Commission." CP at 125. However, Mr. Day's statement is conclusory and gives no detail on how the financial statements aid in "monitoring compliance with state gambling laws and regulations." CP at 83. The financial statements, like the document in *Concerned Ratepayers*, were prepared by a private, nonpublic agency and contain information regarding a private, nonpublic entity. Additional factual findings as to how the Commission uses these statements are necessary to determine whether they are related to a public function. These findings should be based on specific determinations of the Commission's use, rather

than general assertions that the financial statements are used. We remand for further evidence and a determination by the trial court of whether the financial statements meet the test's second prong and are related to the government's conduct.

    1.   EXEMPTION FOR FINANCIAL INFORMATION UNDER RCW 42.56.270(10)

¶20 If the documents are determined to be public records, within the scope of the act, disclosure will be required unless a specific statutory exemption applies. *Dawson*, 120 Wn.2d at 789. Dragonslayer and MT&M assert that the following applies to the financial statements:

> The following financial, commercial, and proprietary information is exempt from disclosure under this chapter:
>
>   . . . .
>
>   . . . Financial information, including but not limited to account numbers and values, and other identification numbers supplied by or on behalf of a person, firm, corporation, limited liability company, partnership, or other entity related to an application for a horse racing license submitted pursuant to RCW 67.16.260(1)(b), liquor license, gambling license, or lottery retail license.

RCW 42.56.270(10)(a).

¶21 Dragonslayer and MT&M assert that the financial statements are exempt because they relate to their application for a gambling license under RCW 42.56.270(10). They argue that, even though the financial documents are not actually required to be filed with the licensing application under WAC 230-04-022,[2] the PDA exemption applies to all information related to the license, not just to the actual documents that are filed as a part of the application process. They assert that if Teeny did not file the state-

---

[2] WAC 230-04-022 outlines the certification procedure for licensure applicants to the Commission. It lists the information required from all applicants and does not include audited financial documents in the list of required documents. *See* WAC 230-04-022.

ments with the Commission, Dragonslayer and MT&M would lose their gambling licenses.

¶22 The Commission disagrees. It asserts that it monitors, regulates, and licenses the gaming industry in Washington and that the financial statements relate to the Commission's first function, monitoring and regulating, and that they do not relate to the licensing function. The Commission asserts that the licensing requirements do not include audited financial statements in the list of required documents. It admits that a gambling license can be revoked for failing to submit an audited financial statement but that submission of an audited financial statement is not part of the application process.

¶23 The PDA is to be broadly construed and its exemptions are to be narrowly construed to promote disclosure of public documents. *Hearst Corp.*, 90 Wn.2d at 127-28. Under a narrow construction, the financial statements are not related to licensing applications because Dragonslayer and MT&M have not demonstrated that they are considered in any particular licensing application or that they will be relevant to such an application in the future. The fact that these financial statements could be relevant in some license applications, or that the failure to produce them could result in loss of a license, does not make all financial statements related to license applications. It is possible that in certain cases, audited financial statements could be related to a licensing application, but there is no evidence that the audited financial statements in this case have that status. We hold on the record before us that if the trial court concludes on remand that the financial statements are public records, the financial statements are not exempt under RCW 42.56.270(1).

2. TRADE SECRETS

¶24 Dragonslayer and MT&M also assert that the financial statements are "trade secrets" exempt from disclosure under former RCW 42.17.260(1) (2006). It argues that the financial statements are a "key" to the business model for

two of the most successful gambling businesses in Washington because every possible expense is outlined in the document. Amicus agrees that there are "trade secrets" contained in the financial statements and that the statements should be reviewed and the "trade secrets" redacted. The Commission urges this court to reject Dragonslayer and MT&M's "trade secret" argument because it is being raised for the first time on appeal.

¶25 A party appealing a public disclosure decision may assert new grounds on appeal if the party had little time or opportunity to develop its legal position before being required to act and where review was de novo. *PAWS*, 125 Wn.2d at 253. Under RAP 2.5(a), "The appellate court may refuse to review any claim of error which was not raised in the trial court." Here, we will not review Dragonslayer and MT&M's "trade secret" argument but order that the trial court consider this issue in the evidentiary hearing on remand.

III. RECENT AMENDMENTS TO RCW 42.56.270

¶26 On May 14, 2007, Washington's governor signed House Bill 1449 into law. The bill amended former RCW 42.56.270 (2006). The amended portion states, "Independent auditors' reports and financial statements of house-banked social card game licensees required by the gambling commission pursuant to rules adopted under chapter 9.46 RCW" are exempt from disclosure. RCW 42.56.270(10)(b) (2007). There is no provision within the newly passed amended and reenacted statute to apply it retroactively.

¶27 Generally statutes are presumed to apply prospectively, unless there is some legislative indication to the contrary. *State v. Humphrey*, 139 Wn.2d 53, 57, 983 P.2d 1118 (1999); *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). An amendment is like any other statute and applies prospectively only. *Humphrey*, 139 Wn.2d at 60 (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992)).

¶28 In the original version of House Bill 1449, the legislature provided that the amendments were "reme-

dial and appli[ed] retroactively." H.B. 1449, 60th Leg., Reg. Sess., at 7 (as proposed on Jan. 19, 2007). The legislature amended the House Bill to remove the retroactive provision. H.B. 1449 (as amended on Apr. 9, 2007). There is no retroactive provision in the bill signed into law by the governor. *See* RCW 42.56.270. The legislature considered and rejected having the amendments apply retroactively.

¶29 However, the presumption that a statute applies prospectively is reversed to favor retroactive application if the amendment is remedial and concerns procedure or forms of remedies. *Marine Power & Equip. Co. v. Wash. State Human Rights Comm'n Hearing Tribunal*, 39 Wn. App. 609, 616-17, 694 P.2d 697 (1985). A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right. *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984). A vested right entitled to protection under the due process clause " 'must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.' " *Caritas Servs. v. Dep't of Soc. & Health Servs.*, 123 Wn.2d 391, 414, 869 P.2d 28 (1994) (emphasis omitted) (quoting *In re Marriage of MacDonald*, 104 Wn.2d 745, 750, 709 P.2d 1196 (1985)).

¶30 By removing the term remedial from the House Bill, the legislature expressed its intent that the amendment is not remedial. Additionally, the statute is not remedial because it would affect Edward Fleisher's vested right in the financial statements that he was entitled to under the PDA. Fleisher filed his public records request before the amendment. If the financial statements are public records and not part of the licensing application or trade secrets, Fleisher had a right to the documents. Because the amendment is not remedial, it is not applied retroactively. The amended RCW 42.56.270 does not apply to the case at hand.

¶31 In conclusion, we reverse the trial court's decision and remand for further proceedings on whether the financial statements are public records and, if so, whether they are exempt as part of a licensing application or as trade secrets.

¶32 Reversed and remanded.

VAN DEREN, A.C.J., and CASEY, J. PRO TEM., concur.