FILED
COURT OF APPEALS
DIVISION II

2015 MAY 19 AM 9: 05

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MIKE BELENSKI, | No. 45756-3-II |
| Appellant, | |
| v. | |
| JEFFERSON COUNTY, a Washington State political subdivision, | PUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J. — In this Public Records Act (PRA)[1] case, Mike Belenski appeals a superior court order granting summary judgment in favor of Jefferson County (County). Belenski argues that the County was required to produce records in response to his requests for (1) the County's Internet access logs (IAL), (2) the electronic records he was seeking for which the County does not generate a backup, and (3) records and contact information relating to a former county employee.

We hold that (1) the County's IALs are subject to disclosure under the PRA because they contain information relating to the conduct of government and therefore are public records, but the PRA statute of limitations bars Belenski's claims relating to one of the IAL requests, (2) the

---

[1] Ch. 42.56 RCW.

County is not required to respond to Belenski's request for electronic records for which the County does not generate a backup because that request did not involve identifiable public records, (3) the County properly withheld records regarding its former employee under statutory exemptions, properly provided a brief explanation to support its claimed exemptions, and did not silently withhold records. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

The County provides an extensive network of computers, servers, and other technology for use by its employees. At any given time, there are over 300 county-owned personal computers (PCs) in service. The County's Information Service Department (IS) secures and maintains this infrastructure using firewall software known as "SonicWall" that, in conjunction with another program called "Viewpoint," automatically generates information regarding contacts between county PCs and the Internet. The record of these contacts is known as an "Internet Access Log" (IAL)[2] or "System Log." The default setting on the software saves this information for 13 months, with each new day deleting and replacing the oldest day. The purpose of providing Internet access to county employees is to give them "tools to perform their job tasks," and network and Internet access is provided as a research and communication apparatus to assist in conducting county business. Clerk's Papers (CP) at 30.

---

[2] The County contends that IAL is different from an "Internet Access Audit Log," which the County is required to maintain by Jefferson County Resolution 17-198. According to the County, an Internet Access Audit Log would only be generated upon the request of a department head.

Belenski made four separate PRA requests for records associated with Internet use by county employees.[3] First, on September 27, 2010, Belenski requested the County's IAL from February 1, 2010 to September 27, 2010 (request #1). The County responded on October 4 that it had no responsive records.

Second, on November 2, 2011, Belenski requested to inspect IALs from January 1, 2011 to November 1, 2011 (request #2). As a result of Belenski's request, IS manager David Shambley discovered that there had been a catastrophic hard drive failure that affected the Viewpoint software. Shambley then informed Belenski that "[g]ood solid archive data" for the IALs was available from only November 10, 2011 forward but that the County had managed to salvage data on some sporadic dates which it would collect and provide. CP at 379. The County offered to permit Belenski to inspect the available IAL data "in their entirety," but Belenski amended his request to seek electronic copies instead of inspection. CP at 226. The County later provided Belenski a compact disc (CD) containing this information. The County considered the request fulfilled at this point, but Belenski considered the IAL data contained on the CD insufficient.

Third, on December 8, 2011, Belenski submitted a PRA request for "electronic copies of every electronic record for which Jefferson County [IS] does not generate a back up" (request #3). CP at 40. The County responded, refusing to produce records because Belenski's request was not a request for "identifiable" public records pursuant to RCW 42.56.080.

---

[3] Belenski made an additional request for "[t]he certificate(s) of records destruction for the [IALs] for February 1, 2010 to September 27, 2010." CP at 216. Because Belenski makes no argument related to this additional request, this request is irrelevant for purposes of this appeal.

Fourth, in August 2012, Belenski requested all records and contact information for a former IS employee (request #4). The County responded, producing some partially redacted documents and providing Belenski with an exemption log for the records that it refused to produce based on the PRA's various privacy exemptions. Belenski argues that the County's response was inadequate because it did not contain brief explanations.

Belenski filed suit on November 19, 2012, alleging several causes of action and complaining of various deficiencies associated with the County's responses to his requests. Shortly thereafter, the County provided the "brief explanations" that Belenski claims were missing from request #4.

## II. PROCEDURE

The County moved for summary judgment, arguing in part that (1) the statute of limitations bars Belenski's claim with respect to request #1, (2) the IALs were not "public records" as defined by the PRA, and (3) in any event, the County had nevertheless satisfied Belenski's request #2 by producing the CD. The County argued further that Belenski had not requested identifiable records in request #3 and that the County had included proper exemption logs with regard to request #4.

The superior court ruled that the County was entitled to summary judgment on Belenski's requests #1, #2, and #3.[4] After an in camera review, the superior court ruled that the County had properly withheld and redacted documents relating to request #4. But the court found that the County had failed to provide brief explanations which entitled Belenski to recover his costs. The

---

[4] The superior court ruled that the IALs did not constitute public records within the purview of the PRA because they were not related to government conduct or a proprietary function and, thus, did not satisfy the second prong of the PRA's definition of "public record." The superior court also agreed that Belenski's request #3 was not a request for "identifiable" public records.

4

superior court dismissed Belenski's claims for requests #1, #2, and #3 and awarded Belenski $434.99 as costs incurred resulting from request #4. Belenski filed a motion for reconsideration, but the superior court declined to reconsider its earlier rulings. Belenski appeals these orders and the superior court's May 2013 memorandum.

## ANALYSIS

### I. STANDARD OF REVIEW

We review challenges to an agency action under the PRA de novo where, as here, the record consists of documentary evidence, affidavits, and memoranda. RCW 42.56.550(3); *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 428, 327 P.3d 600 (2013). Similarly, we review summary judgment orders de novo, viewing the facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Trial courts properly grant summary judgment where the pleadings and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a grant of summary judgment, we consider solely the issues and evidence the parties called to the trial court's attention on the motion for summary judgment. RAP 9.12.

### II. PUBLIC RECORDS – REQUESTS #1 AND #2

Belenski argues that the IALs are public records pursuant to the PRA because the IALs are writings that contain information relating to the conduct of government that are retained by the County. The County responds that the IALs are not public records under the PRA because a nexus does not exist between the IALs and a government function. We agree with Belenski and hold that under the plain language of the PRA, the requested IALs are writings prepared and retained

5

by the County that contain information relating to the conduct of government.[5] We hold, however, that the County was not required to produce records in response to request #1 because the PRA statute of limitations bars Belenski's claim regarding that request.

## A. LEGAL PRINCIPLES

The PRA is a "'strongly worded mandate'" aimed at giving interested members of the public wide access to public documents to ensure governmental transparency. *Worthington v. Westnet*, 180 Wn.2d 500, 506, 341 P.3d 995(2015) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). The statute's language "reflects the belief that the sound governance of a free society demands that the public have full access to information concerning the workings of the government." *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997). Accordingly, courts must avoid interpreting the PRA in a way that would tend to frustrate that purpose. *Worthington*, 180 Wn.2d at 507. The PRA "shall be liberally construed . . . to promote this public policy and to assure that the public interest will be fully protected." RCW 42.56.030.

Whether a document is a "public record" is a critical determination for the PRA's purposes because the Act applies only to public records. *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 444, 161 P.3d 428 (2007). A public record is defined very broadly,

---

[5] Belenski also argues that the burden is on the County to show that the IALs are not public records, implying that the County has failed to do so. Although Belenski is correct that the burden is on the agency seeking to prevent disclosure of public records, that burden is only placed on the agency once the threshold inquiry of whether the records are "public records" is met. *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn. App. 433, 441, 161 P.3d 428 (2007).

No. 45756-3-II.

encompassing virtually any record related to the conduct of government. *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 147, 240 P.3d 1149 (2010).

RCW 42.56.010(3) sets forth the definition of "public record" for purposes of the PRA and provides in relevant part,

> "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

Accordingly, to constitute a public record under the PRA, a record must be (1) a writing (2) containing information relating to the conduct of government or the performance of a governmental or proprietary function and (3) prepared, owned, used, or retained by a state or local agency. *Nissen v. Pierce County*, 183 Wn. App. 581, 590, 333 P.3d 577 (2014), *review granted*, 343 P.3d 759 (2015).

B. THE IALs "CONTAIN INFORMATION RELATING TO THE CONDUCT OF GOVERNMENT"

There is no genuine dispute that the IALs constitute writings that are retained by the County. At issue here is whether the IALs "contain[ ] information relating to the conduct of government or the performance of government." RCW 42.56.010(3). We broadly interpret the second element of the public record test to allow disclosure. *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 746, 958 P.2d 260 (1998).

The purpose of providing Internet access to county employees is to give them "tools to perform their job tasks" and to research and communicate for county business. CP at 30. The requested IALs were generated when a government employee, using a government computer, accessed the Internet. The IALs contain a record of every contact a county employee makes to the Internet. An IAL record displays, among other things, Internet protocol (IP) addresses and the

7

time the contact is made. According to Shambley, the IALs contain "data about data, the so-called meta-data."[6] CP at 364. Apparently, this information can be used to identify which websites employees are contacting, notwithstanding the fact that doing so would involve a "cumbersome" process. CP at 364.

County employees use the Internet to obtain information to perform their work. Therefore, there is no question that the IALs record work-related Internet use on a county-owned computer.[7] Accordingly, we hold that the requested IALs fall squarely within the definition of public records.[8]

## C. PRIOR CASE LAW IS DISTINGUISHABLE

Although our courts have previously construed the second prong of the PRA definition, this is a case of first impression because of the unique nature of the requested data. The County relies on our opinion in *Dragonslayer*, 139 Wn. App. at 439, and our Supreme Court's decision in *Concerned Ratepayers Ass'n v. Public Utilities District No. 1 of Clark County*, 138 Wn.2d 950, 983 P.2d 635 (1999), in support of the proposition that the IALs are not public records because the County did not use the IALs for any purpose before Belenski's requests. Therefore, the County

---

[6] Our Supreme Court has held that the metadata stored as part of an electronic record is a public record subject to disclosure. *O'Neill*, 170 Wn.2d at 147.

[7] The County also contends that the IALs do not satisfy prong three of the definition because the County did not prepare, own, retain, or use them. This argument lacks merit because the County owned the computers and software that created the IALs; Jefferson County Resolution 17-98 required the IS to maintain the IALs and the County retained the IALs at least temporarily.

[8] Because the trial court concluded that the IALs were not public records, it did not consider whether any part of the requested information might be "purely personal in nature" nor did it consider whether any exemptions might apply. Because the County has not claimed that any part of the requested information is purely personal, we do not address that issue nor do we address whether any exemptions might apply.

argues there is no nexus between the IALs and any government use or decision-making as the aforementioned cases require. But those cases are distinguishable because the records at issue in those cases were created by third parties. Here, it is undisputed that the requested information was generated from within the government agency and that no third parties are involved.

In *Dragonslayer*, the issue was whether audited financial statements prepared by an independent public accountant firm and subsequently submitted to the Gambling Commission were public records under the PRA. 139 Wn. App. at 440. There was no dispute that prongs one and three of the public record definition were satisfied because the financial statements were "writings" that were retained by the commission pursuant to the Washington Administrative Code. *Dragonslayer*, 139 Wn. App. at 444. The *Dragonslayer* court was asked to determine whether the financial statements prepared by a third party related to the conduct of government. 139 Wn. App. at 447. Finding the record inadequate to make that determination, we remanded the matter and directed the trial court to make additional findings as to how the commission used the firm's financial statements in order to determine whether they were related to a public function. *Dragonslayer*, 139 Wn. App. at 446.

In part, the *Dragonslayer* court relied on language from *Concerned Ratepayers*. There, our Supreme Court held that technical documents related to the construction of a power plant that were prepared by a third party were nevertheless public records. *Concerned Ratepayers*, 138 Wn.2d at 962. The *Concerned Ratepayers* court reasoned that because a nexus existed between the information and the public utility district's decision-making process, the technical documents were, therefore, "used" by the agency. 138 Wn.2d at 960-61. The court stated, "[T]he information

relates not only to the conduct or performance of the agency or its proprietary function, but is also a relevant factor in the agency's action." *Concerned Ratepayers*, 138 Wn.2d at 960-61.

The County relies on *Dragonslayer* and *Concerned Ratepayers* to argue that a "nexus" is required between the IALs and government function. But in *Dragonslayer* and *Concerned Ratepayers*, it was unclear whether the requested records related to a government function because the information was generated by a third party and not by the agency.[9] Therefore, those courts required that the *third-party-generated information* must be actually "used" by the government agency to be considered a public record. *Concerned Ratepayers*, 138 Wn.2d at 961; *Dragonslayer*, 139 Wn. App. at 446.

But here, where government employees use government computers and software to access the Internet for their assigned work, there is no need to require the resulting IALs to be "used" by the agency in order to be a record "containing information relating to the conduct of government." RCW 42.56.010(3). Under these facts and under a plain reading of the PRA, it is sufficient that the requested information "contain[s] information relating to . . . governmental . . . function." RCW 42.56.010(3).

The County also relies on *Tiberino v. Spokane County*, 103 Wn. App. 680, 13 P.3d 1104 (2000), to support its argument that there needs to be a "nexus" or "use" requirement. Although the requested information in *Tiberino* did not involve third-party-generated information, that case is nevertheless distinguishable. There, Division Three of this court held that personal e-mails sent

---

[9] We also note that while the *Dragonslayer* court's analysis revolved around prong two of the "public record" definition, *Concerned Ratepayers* involved an examination of prong three of that definition. 138 Wn.2d at 958.

from Tiberino's county-owned computer were public records within the scope of the PRA because the county printed the e-mails in preparation for litigation resulting from Tiberino's termination, a proprietary function. *Tiberino*, 103 Wn. App. at 688. Thus, the County argues that county-generated e-mail was not considered a public record until it was "used" in connection with government business. But in *Tiberino*, it was undisputed that the e-mails was purely personal in nature even though they were generated by a government employee on a government computer. Here, in contrast, the County does not claim that any of the requested IALs are purely "personal" in nature. We therefore find *Tiberino* unhelpful on the issue of whether the requested IALs are public records.

To further support its argument that the IALs do not relate to government conduct, the County argues that the IALs were collected only as an unwanted function of the County's software program. The County argues further that IAL data might be a public record within the terms of the PRA if it were used to create an audit log of employee Internet use that was then used in connection with some proprietary function. The record establishes that the County never reviewed the IALs or used them for any governmental function. IS manager Shambley declared that he had never been asked to produce the IAL data by any county supervisor, manager, elected official, or director. The County "virtually ignored" the IALs, at least until Belenski's PRA requests. CP at 292.

But the County's arguments do not address whether the IALs nonetheless "contain[ ] information related to the conduct of government." RCW 42.56.010(3). And we hold that there is no requirement under the PRA that the IALs be "used" by the government when the IALs are created by government employees using government computers and software in the course of their

assigned work. To the extent the superior court required such a use or nexus, it erred. Under these circumstances, the IALs contain information relating to the conduct of government such that they satisfy prong two of the "public records" definition.

### D. STATUTE OF LIMITATIONS ON REQUEST #1

The County also argues that any claim Belenski can assert with regard to his request for the County's IALs from February 1, 2010 to September 27, 2010 (request #1), is barred by either the PRA's one-year statute of limitations, RCW 42.56.550(6), or by the two-year "catch-all" statute of limitations contained in RCW 4.16.130. We hold that Belenski's claim with regard to request #1 is barred by the two-year statute of limitations.

A request for records under the PRA is subject to two separate limitation periods. One provision in the Act itself provides that a plaintiff must file an action within one year of either (1) an agency's claim of exemption from the PRA's disclosure requirements, or (2) an agency's "last production of a record on a partial or installment basis." RCW 42.56.550(6); *Johnson v. Dep't of Corr.*, 164 Wn. App. 769, 775, 265 P.3d 216 (2011), *review denied*, 173 Wn.2d 1032 (2012). Alternatively, the two-year "catch-all" statute controls when there are no other applicable statutes of limitation. *Johnson*, 164 Wn. App. at 777.

Here, the County contends that its answer to Belenski's request #1 of "no responsive records" triggered the running of the PRA's one-year statute of limitations. CP at 214. Although it is not immediately clear whether such a response would trigger the PRA's one-year statute, we need not answer this question because Belenski's suit was untimely under the latter two-year statute.

Belenski made request #1 on September 27, 2010. The County mailed a letter stating that it had "no responsive records" on October 4, and e-mailed him the same answer on October 5. CP at 214. Belenski does not dispute having received the responses on those dates. Belenski did not file his complaint until November 19, 2012, over two years after the County responded to request #1. Accordingly, we hold that Belenski's claim regarding the County's IALs from February 1, 2010 to September 27, 2010 (request #1) is barred by the statute of limitations contained in RCW 4.16.130.

### E. County's Production of CD On Request #2

The County further argues that if the IALs are considered public records, it nevertheless satisfied request #2 by providing Belenski with the CD containing the "aggregate" IAL summary. Belenski responds that he never agreed to accept a summary report of the Internet activity in lieu of his request for the complete IALs.

But this issue is not ripe for our review, and even if it were, the record is not developed enough to determine whether the CD was sufficient to satisfy Belenski's request. The superior court made no ruling regarding the CD as it pertained to request #2. And from the record before us, we cannot discern what the CD actually contained. The record includes neither the CD itself nor any copy of the files thereon. To address this contention, additional fact finding is required on remand.

### III. Identifiable Records – Request #3

Belenski next contends that PRA request #3 for "electronic copies of every electronic record for which Jefferson County [IS] does not generate a back up" was a request for "identifiable" records. CP at 40. We conclude that Belenski's request was not one for identifiable

13

public records because the County never kept records in such a way that would allow them to identify records that were not "backed up" and because the PRA does not require an agency to conduct research or to explain public records.

A request under the PRA must be for an *"identifiable public record." See Hangartner v. City of Seattle*, 151 Wn.2d 439, 447-48, 90 P.3d 26 (2004) (emphasis added) (quoting former RCW 42.17.270 (1987)). A mere request for *information* does not so qualify. *Wood v. Lowe*, 102 Wn. App. 872, 879, 10 P.3d 494 (2000); *Bonamy v. City of Seattle*, 92 Wn. App. 403, 410-12, 960 P.2d 447 (1998). Moreover, although there is no official format for a valid PRA request, "a party seeking documents must, at a minimum, [(1)] provide notice that the request is made pursuant to the [PRA] and [(2)] identify the documents with reasonable clarity to allow the agency to locate them." *Hangartner*, 151 Wn.2d at 447. The PRA does not require agencies to research or explain public records, but only to make those records accessible to the public. *Bonamy*, 92 Wn. App. at 409. And a court cannot order production of records that do not exist. *Neighborhood Alliance of Spokane County v. County of Spokane*, 172 Wn.2d 702, 753, 261 P.3d 119 (2011). When a request is invalid, the agency is excused from complying with it. *Bonamy*, 92 Wn. App. at 412.

Belenski's claim that he requested "identifiable records" is unpersuasive. First, the County does not bifurcate records in a manner that would allow it to provide Belenski with a copy of every record that the County does not "back up." Shambley described IS's recommendation that county employees take it upon themselves to employ precautionary measures to save electronic records to external servers or drives maintained by the County. Whether or not county employees heed this advice is not something that IS tracks. Consequently, if the County were required to research an untold number of records to respond to Belenski's request, it would be obligated to create and

14

produce records that do not currently exist. *Bonamy*, 92 Wn. App. at 409; *Neighborhood Alliance*, 172 Wn.2d at 753. This is a result that the PRA neither intends nor requires.

Second, Belenski's request is essentially a request for information. In *Bonamy*, Division One of this court held that Bonamy failed to make a request for identifiable records in part because he stated that he wanted to "know" what policy guidelines govern investigations into employee conduct and how they differ from other related policies rather than simply requesting copies of the policies themselves. 92 Wn. App. at 409. Similarly, in *Smith v. Okanogan County*, 100 Wn. App. 7, 19, 994 P.2d 857 (2000), Smith asked the Okanogan County Commissioners' Office to advise him when, how, and why the county became a municipal corporation. The court held that Smith's request failed to identify a public record. *Smith*, 100 Wn. App. at 19. Instead, Smith was essentially requesting information. *Smith*, 100 Wn. App. at 19.

Here, responding to the County's assertion that he had failed to request identifiable records, Belenski said that he wanted the records in part because he wanted to identify "what public records are at risk of permanent loss." CP at 237. By virtue of his request, Belenski was essentially seeking information associated with the County's approach or policy regarding storage and maintenance of electronic records. Belenski sought to determine whether there are records (and if so, which records) that the County does not trouble itself to secure. For the foregoing reasons, we hold that Belenski's request #3 was not a request for "identifiable" public records within the meaning of the PRA.

IV. EMPLOYMENT RECORD EXEMPTIONS – REQUEST #4

Belenski further argues that the County improperly withheld records related to a former county employee because the claimed exemptions for employees and applicants no longer apply

to a former employee. Belenski claims that at least some of the records that were withheld entirely should have been produced with partial redactions. We hold that Belenski's claims fail because he cites no authority to suggest that exemptions for employee privacy do not apply to former employees.[10]

## A. APPLICATION OF EXEMPTION TO FORMER EMPLOYEES

The PRA requires a government agency to disclose any public record upon request; however, an agency lawfully withholds production of records if one of the PRA's enumerated exemptions applies. RCW 42.56.070(1); *Sanders v. State*, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). "The PRA's exemptions are provided solely to protect relevant privacy rights or vital governmental interests that sometimes outweigh the PRA's broad policy in favor of disclosing public records." *Resident Action Council*, 177 Wn.2d at 432. The burden is on the agency to establish that an exemption applies. RCW 42.56.550(1); *Resident Action Council*, 177 Wn.2d at 428.

Here, the County invoked the exemptions contained in former RCW 42.56.250(2)-(3) (2010) either to withhold entirely or redact partially records associated with the former employee's personnel file and employment application materials. Former RCW 42.56.250 exempts some public employee records from public inspection and copying under the PRA and provides that the following records are exempt,

---

[10] Belenski also asserts that the superior court erred by failing to make written findings that the exemptions were proper specifically because the protected relevant privacy rights or vital government interests applied to the former employee's personnel information. But Belenski did not raise this issue before the superior court, and he cites no authority to support the notion that a court must enter such findings when it determines that an exemption applies. Therefore, we decline to further address this assertion.

(2) All applications for public employment, including the names of applicants, resumes, and other related materials submitted with respect to an applicant;

(3) The residential addresses, residential telephone numbers, personal wireless telephone numbers, personal electronic mail addresses, social security numbers, and emergency contact information of employees or volunteers of a public agency, and the names, dates of birth, residential addresses, social security numbers, and emergency contact information of dependents of employees or volunteers of a public agency that are held by any public agency in personnel records, public employment related records, or volunteer rosters, or are included in any mailing list of employees or volunteers of any public agency.

The record reveals that the County withheld four documents in their entirety. Three of these documents were related to the former employee's county employment application and one was related to his family's medical information. The employment application documents include background checks, résumés, the application itself, and driving records. These documents clearly constitute the type of employment application material categorically exempt under former RCW 42.56.250(2). The County also produced three documents with partial redactions to exclude residential addresses, personal e-mail and telephone numbers, as well as medical information. Each of these are also properly exempt under the PRA. *See* former RCW 42.56.250(3); RCW 42.56.360(2).

The crux of Belenski's argument appears to be that the County was not entitled to refuse to produce these records by availing itself of the aforementioned exemptions because the former employee is neither an applicant nor is he an employee. But there is no language in either of those exemptions that limits their application only to current employees or only to those whose applications for employment happen to be contemporaneous with a PRA request. Such a reading would defy reason and jeopardize privacy. *See Seattle Firefighters Union Local No. 27 v. Hollister*, 48 Wn. App. 129, 134, 737 P.2d 1302 (1987) (construing public employee privacy

17

exemption contained in former RCW 42.17.310(1)(b) (1987) to apply to retired firefighters and police officers). We hold that the exemptions apply to the former employee's records and, therefore, the County properly withheld or redacted them.

Belenski next also argues that a one-page "screenshot" that the County withheld under former RCW 42.56.250(2) and (3) should have been produced with partial redactions because it contains the former employee's employee number aside from his exempt home address. But our courts have held that an employee's name coupled with his or her identification number, can be properly exempt under the PRA for privacy because such material could potentially provide access to other exempt personal information. *Tacoma Pub. Library v. Woessner*, 90 Wn. App. 205, 221-22, 951 P.2d 357, 972 P.2d 932 (1998).[11] We hold that the County properly withheld the screenshot record.

## B. BRIEF EXPLANATIONS

Belenski argues that the County's exemption logs continue to lack the necessary "brief explanation" required by the PRA. Br. of Appellant at 31. Belenski also asserts that the County "silently withheld" records from him. Br. of Appellant at 34. We hold that the County provided a sufficient brief explanation in its revised exemption log.

An agency withholding or redacting any record must specify the exemption *and* give a brief explanation of how the exemption applies to the document. RCW 42.56.210(3); *Sanders*,

---

[11] Belenski also claims that he should have been entitled to a partially redacted screenshot because the screenshot displayed a time of 11:48 AM. But the time that appears on the screenshot is not an actual part of the employee record being displayed. Rather, it is the time that the screenshot was taken on the county employee's computer, separate and distinct from the redacted record. The record itself shows only the former employee's name, his home address, and his employee number, which, as we have explained, is all exempt under the PRA for privacy.

169 Wn.2d at 846. Merely identifying the document and the claimed exemption does not suffice to satisfy the brief explanation requirement. *Sanders*, 169 Wn.2d at 846.

Here, the County initially cited only the name of the document and the applicable exemption in the exemption log it provided to Belenski in response to request #4. Shortly after Belenski commenced this litigation, the County provided a revised exemption log that contained a new section dedicated to brief explanations for each claimed exemption. The superior court ruled that because the County satisfied its obligation under the PRA only after Belenski filed suit, Belenski was entitled to recover his costs. Because he prevailed on this issue, the nature of Belenski's argument to this court is unclear.

To the extent that he contends that the revised exemption logs lack the requisite brief explanation, Belenski's argument fails. In addition to identification of each record and the applicable exemption, the revised log features a section entitled "Brief Explanation." CP at 657-58. There, the County provides a description of either the nature of the document that justifies exemption as a whole or an explanation as to the particular information that permits redaction. We hold that Belenski's claim fails.

## C. SILENT WITHHOLDING

Belenski claims that the County silently withheld records from him. Belenski bases this assertion on the fact that he later discovered numerous records responsive to request #4 that had not been provided to him by the County. In Belenski's view, the fact that his request for the former employee's records "had only been sent to 3 entities" was evidence that the County purposely and deceptively withheld records. Br. of Appellant at 34. We hold that the County did not silently withhold records.

The PRA prohibits "silent withholding" or the failure to reveal that some records have been withheld in their entirety, which gives requesters the misleading impression that all documents relevant to the request have been disclosed. *Progressive Animal Welfare Soc. v. Univ. of Wash.*, 125 Wn.2d 243, 270-71, 884 P.2d 592 (1994). "'The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents.'" *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012) (quoting *Neighborhood Alliance*, 172 Wn.2d at 720), *review denied*, 177 Wn.2d 1002 (2013).

The record shows that the County forwarded Belenski's request #4 to three departments: auditor/payroll, central services, and Board of County Commissioners/Human Resources (BoCC/HR). Belenski cites no authority to support the proposition that the County violated the PRA by filtering Belenski's request through only three county departments. Nor does Belenski show that the County's search for the requested documents was unreasonable. As part of request #4, Belenski asked for all e-mails to and from the former employee, all records documenting his training involving the PRA, and all records containing his contact information. Considering the nature of Belenski's request, it was reasonable to contact the auditor/payroll, central services, and BoCC/HR.

Moreover, even had the County provided the same records Belenski was able to acquire through other means, it would have been entirely within the right of the County to redact the former employee's personal information as explained above. The County did not violate the PRA by "silently withholding" records.

20

CONCLUSION

We hold that the County's IALs are "public records" because they contain information relating to the conduct of government. Therefore, we reverse the trial court's grant of summary judgment to the County on request #2. We affirm the trial court's grant of summary judgment to the County on requests #1, #3, and #4. Accordingly, we reverse in part, affirm in part, and remand for action consistent with this opinion.

JOHANSON, C.J.

We concur:

MAXA, J.

LEE, J.