IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| JOSEPH THURURA, | ) | No. 36512-3-III |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT | ) |  |
| OF CORRECTIONS, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

SIDDOWAY, J. — After inmate Joseph Thurura sued the state Department of

Corrections (DOC) for violating the Public Records Act (PRA), chapter 42.56 RCW, the

DOC conducted a further search better calculated to locate and produce records

responsive to his public record request. The trial court dismissed his action in response to

a show cause motion brought by DOC and Mr. Thurura appeals, challenging the show

cause procedure and arguing that the evidence revealed that DOC had initially conducted

an inadequate record search, as he had claimed.

The show cause procedure was not an authorized procedure, but the error in using

it was harmless. Because we find that DOC's initial search was inadequate, Mr. Thurura

is entitled to be awarded his costs of the action, although not a penalty. We remand with

directions to award Mr. Thurura his costs.

FACTS AND PROCEDURAL BACKGROUND

On May 19, 2017, Joseph Thurura, an inmate at the Airway Heights Corrections Center, was accused of being involved in a fight with another inmate in the prison's textile department. That day, two of the department's correctional industries supervisors, Geraldine Sauter and Chris Burnette, drafted incident reports on what they observed. Mr. Burnette's report stated that he did not see a fight, but after hearing "banging, rustling noises," he left his office and observed Mr. Thurura walking out of the worker restroom in the textile department looking "somewhat winded, agitated and disheveled." Clerk's Papers (CP) at 65. When Mr. Burnette called Mr. Thurura into the office and asked him what happened, he said, "I'm not saying anything." *Id.* Mr. Burnette's report stated that Ms. Sauter than called to report a fight in the textiles department.

Ms. Sauter's report stated that Mr. Thurura and another inmate walked by her office toward the restroom that morning and both appeared "agitated/off baseline." CP at 66. Her incident report stated that after a "possible fight" was reported, custody staff responded and the two inmates were strip searched and escorted to the administrative segregation unit. *Id.*

Mr. Thurura complains that during the June 2017 hearing on the infraction, hearing staff did not have incident reports but found him guilty anyway. Evidently, the fact that the two incident reports existed was in evidence, but the reports themselves were

2

not.  Believing his right to due process had been violated, Mr. Thurura began in July

2017 to request any records reflecting the evidence against him and followed up on

responses with which he was dissatisfied.  The record of his efforts in 2017 and early

2018 is sketchy because he did not designate relevant documents as part of the clerk's

papers.[1]  Although Mr. Thurura provided background information in the show cause

hearing below, there are many gaps in the transcript of his argument, identified as

"unintelligible."

On February 11, 2018, Mr. Thurura submitted the public record request that is the

subject matter of this appeal.  He requested:

1) The metadata associated with the Incident Report (IR) written by Chris
   Burnette (CISA), on 05/19/2017; specifically, I want to know the date
   and time this Incident Report (IR) was created (generated).
2) The metadata associated with the Incident Report (IR) written by G.
   Sauter (CISA), on 05/19/2017; specifically, I want to know the date and
   time this Incident Report (IR) was created (generated).

CP at 45.

DOC received the public record request on February 16.  Its public records

specialist Davis Needham acknowledged receipt on February 26.  That same day, Mr.

Needham made the following request of DOC's public disclosure unit:

Please gather the following records: The Incident report written by Chris
Burnette on 5/19/2017 in regard to Joseph Thurura, DOC # 332733,

---

[1] We will not consider documents attached to Mr. Thurura's opening brief because
they were not properly designated as part of the record.  *See* RAP 9.6, 10.3(a)(5).

> The incident report written by G. Sauter on 5/19/2017 regarding Joseph Thurura, DOC # 332733.
>
> [H]e has requested the metadata for this record, so I will need an unaltered electronic version if available, if unavailable, please provide any records which show the date and time at which this IR was produced.

CP at 49.

DOC disclosure unit employee Anne Graves forwarded the request to the prison's captain's office. After no responsive records were located in the captain's office, Mr. Needham sent Mr. Thurura a letter on March 13 that stated, "A search has been conducted and no records were found responsive to your request." CP at 43.

Mr. Thurura then filed the action below, alleging that DOC failed to adequately search for and produce records in response to his request. Among Mr. Thurura's allegations was that because DOC tracks employees' computer use, it had the ability to identify the date and time employees create incident reports.

In response to the filing of the lawsuit, DOC staff performed a further search. The further search evidently involved inquiring of Mr. Burnette, because on May 2, 2018, he sent an e-mail to Janet Nelson that forwarded an e-mail Ms. Sauter had sent to her shift lieutenant and 11 others on the day of the alleged fight.[2] (Ms. Sauter was no longer employed by DOC.) Ms. Nelson is the legal liaison officer for the prison, whose duties

---

[2] Her e-mail was sent "to" the shift lieutenant and three others; it was "cc'ed" to eight additional recipients.

4

include assisting with facilitating discovery and other aspects of litigation when prison staff or DOC is a party to a lawsuit.

Ms. Sauter's e-mail had provided her shift lieutenant and the others with a pdf of her and Mr. Burnette's signed incident reports. It was sent at 12:11 p.m. on the day of the fight. The subject line of her e-mail was "Lang 862769 & Thurura 332733 Textiles Incident 5/19/2017." *Id.* It is apparent from Ms. Sauter's e-mail that the pdf of her and Mr. Burnette's signed reports was created at 9:59 a.m. on May 19. (She "received" the pdf at that time from copier@doc1.wa.gov.) *Id.*

A little over a week later, DOC answered Mr. Thurura's complaint, generally denying all his allegations.

On May 30, 2018, an assistant attorney general (AAG) sent Mr. Thurura a letter saying she had confirmed with DOC's information technology department that the metadata Mr. Thurura requested did not exist. The letter said that "[a]ny incident report saved would be in a scanned format that would not include metadata associated with the date and time the report was written." CP at 18. The AAG threatened to seek costs for a frivolous action if Mr. Thurura went forward with his suit. *Id.*

In October 2018, DOC filed a "motion to show cause," asking the trial court to determine whether there had been a violation of the PRA. CP at 27 (capitalization omitted). Among its support for the motion were declarations from Ms. Nelson and from

5

the chief digital forensics investigator for the DOC's information technology department. Included among exhibits supporting the motion was the Sauter e-mail that Ms. Nelson obtained from Mr. Burnette in early May.

Ms. Nelson's declaration explained why communication of the pdf of the incident reports to and from Ms. Sauter on the day of the fight was not located in responding to Mr. Thurura's February 11, 2018 record request:

> 3. Incident reports are used to document inmate behavior. Staff may access incident report forms online and fill out various information on the form. Staff then print out the form and add their signature. Then the signed form will likely be scanned and emailed to the Shift Lieutenant and Shift Sergeant along with any other relevant staff pertaining to the incident.
>
> 4. In some cases, the incident report may be used as evidence for an inmate infraction. In those cases, the incident report is submitted with the infraction packet for the Hearings Officer's consideration. Infraction records are maintained in the Captain's Office until they have met their applicable retention period. It is not the responsibility of staff to retain additional infraction documents or reports that they may have submitted as part of the infraction.
>
> 5. On May 19, 2017, two Airway Heights Corrections Center employees, Geraldine Sauter and Chris Burnette, drafted incident reports in response to an event that indicated Joseph Thurura, DOC #332733, had been fighting with another inmate. Both staff members printed the reports, signed the reports, scanned the signed reports and emailed the scanned copies to necessary staff. However, the incident reports were not submitted as part of the infraction packet.

CP at 61. Ms. Nelson explained that in processing Mr. Thurura's February 11, 2018 record request, DOC employees only inquired of the prison captain's office and it was "[a]fter Thurura filed his lawsuit [that] a subsequent search was conducted and identified

6

the scanned copies of the incident reports on Chris Burnette's work computer drive in PDF format."  CP at 61.

The DOC forensic investigator's declaration addressed Mr. Thurura's belief that DOC maintained records of Mr. Burnette's and Ms. Sauter's computer usage, stating, "[O]nly limited information is maintained on a user's computer usage for 90 days.  For that short period, only domain logs, users logon/logoff times and the equipment being used is accessible.  Information on when specific documents were created/generated would not be maintained."  CP at 70.

Mr. Thurura's response to DOC's motion argued that DOC's own submissions demonstrated it had conducted an inadequate search, since it did not contact Mr. Burnette or ensure that his or Ms. Sauter's computer files were searched until after he filed his lawsuit.

At the conclusion of its hearing on DOC's motion, the trial court orally ruled that DOC accurately responded to Mr. Thurura's request that no records existed and its search was reasonable.  It denied DOC's request that it find Mr. Thurura's lawsuit frivolous. Mr. Thurura timely appealed the court's written order dismissing his action with prejudice.

## ANALYSIS

Mr. Thurura contends the trial court erred in finding that DOC did not violate the

PRA.  He also argues that the trial court erred by allowing DOC to rely on an

inapplicable show cause procedure.

Under Washington's Public PRA, agencies must make identifiable public records

available for public inspection and copying.  RCW 42.56.080.  "Public record" is broadly

defined by the act as "any writing containing information relating to the conduct of

government . . . prepared, owned, used, or retained by any state or local agency

regardless of physical form or characteristics."  RCW 42.56.010.  "[A]n electronic

version of a record, including its embedded metadata, is a public record subject to

disclosure."  *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 147, 240 P.3d 1149 (2010).

"When a PRA request is made, a government agency must hold onto . . . records,

including their metadata; they cannot be deleted."  *Id.* at 150.

*Procedure*

We begin with Mr. Thurura's challenge to the procedure followed by DOC.  The

PRA provides that a *record requestor* may bring a show cause proceeding to require an

agency to demonstrate why it refuses to allow inspection or copying of a public record or

to demonstrate why its estimate of response time is reasonable.  *See* RCW 42.56.550(1)

and (2).  In *O'Neill v. City of Shoreline*, the Supreme Court cited a regulation that

addressed why the procedure is provided for requestors:

> "The act provides a speedy remedy for a *requestor* to obtain a court hearing
> on whether the agency has violated [RCW 42.56.550].  The purpose of the

quick judicial procedure is to allow *requestors* to expeditiously find out if
they are entitled to obtain public records."

170 Wn.2d at 153 (alteration in original) (emphasis added) (quoting former WAC 44-14-08004(1) (2006)).

A show cause procedure is essentially an accelerated motion procedure. *Kittitas County v. Allphin*, 2 Wn. App. 2d 782, 790-91, 413 P.3d 22, *review denied sub nom. Kittitas County v. Sky Allphin*, 191 Wn.2d 1014, 426 P.3d 740 (2018). While the show cause procedure is not available to an agency in a PRA action, an agency may invoke the judicial review provided for by RCW 42.56.550(3) with a motion under CR 7(c). *Allphin*, 2 Wn. App. 2d at 792. Under RCW 42.56.550(3), the agency's motion may be heard based solely on affidavits. *Id.* Judicial review is de novo. *Id.*

In *Allphin*, we held that an agency's mischaracterization of its motion as one for an order to show cause had not required the trial court to refuse judicial review in that case, because the agency acknowledged it bore the burden of proof and the record requestor was not prejudiced by the accelerated procedure. Similar circumstances are presented here: DOC acknowledges its burden of proof, *see* CP at 31, and Mr. Thurura fails to demonstrate prejudice. The procedure followed by DOC, while unauthorized by court rule or statute, was harmless.

*Failure to perform an adequate search*

The PRA violation on which Mr. Thurura relies for his appeal is DOC's failure to

conduct a reasonable search.[3]

Under the PRA, to determine whether the agency's search was adequate, "the focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate." *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 719-20, 261 P.3d 119 (2011). Our Supreme Court has held the "[t]he adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." *Id*. at 720. The agency does not have to search every possible location, "but only those places where it is reasonably likely to be found." *Id*. (emphasis omitted). The search should not be limited to one record system if there are others that are likely to turn up the information requested. *Id.*

DOC explains that Ms. Graves assumed the reports would be found in the captain's office because they pertained to an infraction and that is where she expected infraction records to be found. But DOC's declarations establish that incident reports that are not used in an infraction proceeding will *not* be found in the captain's office. DOC's search should have extended to locations where incident reports that are not part of an infraction packet are likely to repose—and computers used by the persons who created the reports are obvious places to look. DOC's argument that it did not need to contact

---

[3] Mr. Thurura does not contend that his lawsuit resulted in him obtaining the record and information he requested. He implicitly agrees with DOC's assumption that the electronic documents whose metadata he had in mind were the original electronic forms completed by Mr. Burnette and Ms. Sauter, which they did not save.

Mr. Burnette because he was not the person responsible for retaining the record ignores the relevant standard.

The captain's office was a reasonable place to start the records search but not a reasonable place to end it. Reviewing the DOC's actions de novo, we agree with Mr. Thurura that the agency conducted an inadequate search.

*Alleged improper deletion of a record*

Mr. Thurura also alleges that DOC improperly deleted records of Mr. Burnette's and Ms. Sauter's computer usage after receiving a record request that required that they be preserved. His complaint averred that "DOC tracks employees' computer use," and "DOC has the ability to identify the date/time employees create incident reports." CP at 4. In asking the trial court to find no PRA violation, DOC provided the court with its information technology employee's testimony that when it comes to generic employee computer usage information,

> Only limited information is maintained on a user's computer usage for 90 days. For that short period, only domain logs, users [sic] logon/logoff times and the equipment being used is accessible. Information on when specific documents were created/generated would not be maintained.

CP at 70.

In arguing that DOC engaged in improper destruction, Mr. Thurura asserts that he served his first record request on July 2, 2017, and relies on the "Record Retention Act," chapter 40.14 RCW, DOC record retention policies, and RCW 42.56.100, which requires

agencies to retain possession of records past their scheduled destruction date if it receives a request for such records. Violations of the Record Retention Act do not give rise to a cause of action under the PRA. *West v. Dep't of Nat. Res.*, 163 Wn. App. 235, 244-46, 258 P.3d 78 (2011). As for the PRA provision, the record on appeal designated by Mr. Thurura does not include a request for records that he made within 90 days of May 19, 2017, that should have caused DOC to preserve records responsive to his February 11, 2018 record request.[4]

*Mr. Thurura's remedy*

RCW 42.56.550(4) provides that a person prevailing against an agency in any action in the courts seeking the right to inspect or copy a public record "shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." When an agency conducts an inadequate search but no responsive documents are ultimately found and produced, a prevailing party "is at least entitled to costs and reasonable attorney fees." *Neigh. All.*, 172 Wn.2d at 724-25. Our Supreme Court has so far not held that a daily penalty is available. *See id.* This court has denied penalties for violations that do not deny the right to copy or inspect public records, even when no other remedy is available. *See Hikel v. City of Lynnwood*, 197 Wn. App. 366, 379, 389 P.3d

---

[4] We assume without deciding that the computer usage records would be a public record. *Cf. Belenski v. Jefferson County*, 187 Wn. App. 724, 735, 350 P.3d 689 (2015) (deciding as a matter of first impression that Internet access logs that county deleted after 13 months were public records), *rev'd in part on other grounds*, 186 Wn.2d 452, 378 P.3d 176 (2016).

No. 36512-3-III
*Thurura v. Dep't of Corr.*

677 (2016) (only attorney fees and costs available where agency's sole violation was failing to provide a reasonable estimate of the time for response); *Mitchell v. Dep't of Corr.*, 164 Wn. App. 597, 606, 277 P.3d 670 (2011) ("Penalties are available only for a party who prevails on a claim of being denied the right to inspect or copy public records.").

Because DOC's inadequate search did not result in a denial of Mr. Thurura's right to inspect or copy a public record, he is entitled to costs but not a penalty. (Mr. Thurura has proceeded pro se, so reasonable attorney fees are not at issue.) We reverse the order dismissing Mr. Thurura's complaint and remand with directions to award him costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Fearing, J.

13