[No. 52234-1. En Banc. February 5, 1987.]

THE CITY OF FERNDALE, *Appellant,* v. GUNNER B. FRIBERG, ET AL, *Respondents.*

THE CITY OF FERNDALE, *Appellant,* v. CHUN MING WANG, ET AL, *Respondents.*

*Preston, Thorgrimson, Ellis & Holman,* by *Forrest W. Walls* and *Robert B. Mitchell,* for appellant.

*Rolf Beckhusen,* for respondents Friberg.

*Smith & Rosellini,* by *Jacob L. Smith,* for respondents Chun Ming Wang, et al.

GOODLOE, J.—The primary issues in this case are the applicability and constitutionality of RCW 84.34.300–.380, which create an assessment exemption for open space farm and agricultural lands. Appellant, the City of Ferndale, challenges a summary judgment order in favor of respondents in the City's action to foreclose assessment liens on respondents' properties. We affirm.

Respondents Friberg own a farm of approximately 70 acres. Respondents Wang and Cheng own a farm of 43 acres. In 1976, both farms were reclassified as open space farm and agricultural land under RCW 84.34, exempting them from liability for property taxes.

On April 16, 1979, the City adopted ordinance 592, which created Utility Local Improvement District 5 (ULID 5). The respondents signed a petition favoring the formation of the district, but because of procedural defects in the petition, the City formed ULID 5 by resolution. On June 7, 1979, RCW 84.34.300–.380 became effective, exempting properties classified as farm and agricultural land from special benefit assessments for local improvements.

On August 18, 1980, the City adopted ordinance 608 approving and confirming the assessment roll and assessments for ULID 5 for the construction of certain improvements and levying and assessing amounts thereof against property shown on the assessment roll. The bonds funding the improvements were not issued and sold to bondholders until after the City adopted bond ordinance 629 on April 6, 1981.

Respondents' properties were included on the assessment roll. They did not challenge the assessments at the assessment hearing, nor did they appeal from the final assessment roll. Neither property is served by the water supplied by ULID 5.

The City began foreclosure proceedings against both respondents in 1984 for nonpayment of assessments. All parties moved for summary judgment. In an oral ruling, the trial court granted the respondents' summary judgment motions. The City moved for reconsideration or, in the alternative, for an order joining the bondholders as necessary parties. On October 16, 1985, the trial court denied the City's motion and entered summary judgment for the respondents, and ordered that the actions be consolidated.

I

First, we address whether RCW 84.34.300–.380 are to be applied retroactively. RCW 84.34.320 provides in pertinent part:

> Any farm and agricultural land which is designated for current use classification pursuant to chapter 84.34 RCW at the earlier of the times the legislative authority of a

local government adopts a resolution, ordinance, or legislative act . . . (2) to approve or confirm a final special benefit assessment roll relating to a sanitary and/or storm sewerage system, domestic water supply and/or distribution system, or road construction and/or improvement, which roll would have included such land but for such classification designation, *shall be exempt from special benefit assessments or charges in lieu of assessment for such purposes as long as that land remains in such classification* . . .

(Italics ours.)

The City claims that the exemption provided by RCW 84.34.320 does not apply because the statute was enacted after the formation of ULID 5. The respondents claim that the exemption does apply where no bonds were issued, construction undertaken, or assessments made until after the statute became effective.

██ The presumption is that a statute will only apply prospectively, unless (1) there is legislative intent to apply the law retroactively, or (2) the statute is remedial and retroactive application would further its remedial purpose. *Macumber v. Shafer,* 96 Wn.2d 568, 570, 637 P.2d 645 (1981); *Johnston v. Beneficial Management Corp. of Am.,* 85 Wn.2d 637, 641, 538 P.2d 510 (1975).

To ascertain legislative intent, this court generally looks for express language indicating retroactive application. *See, e.g., In re Marriage of MacDonald,* 104 Wn.2d 745, 748, 709 P.2d 1196 (1985); *Miebach v. Colasurdo,* 102 Wn.2d 170, 180, 685 P.2d 1074 (1984); *Bodine v. Department of Labor & Indus.,* 29 Wn.2d 879, 888, 190 P.2d 89 (1948). Legislative intent may also be inferred from other evidence, such as the use of past tense in the language of the statute, or a legislative statement of a strong public policy that would be served by retroactive application. *Johnston,* at 641–42.

In the present case, there is no express legislative statement of retroactive application. However, the past tense is used in important provisions, such as RCW 84.34.310(6), defining "[s]pecial benefit assessment" as one "*levied* or capable of being levied . . ." (Italics ours.) Additionally,

the Legislature's intent to protect farms is clear. RCW 84.34.300 provides:

> The legislature finds that farming and the related agricultural industry have historically been and currently are central factors in the economic and social lifeblood of the state; that it is a fundamental policy of the state to protect agricultural lands as a major natural resource in order to maintain a source to supply a wide range of agricultural products; and that the public interest in the protection and stimulation of farming and the agricultural industry is a basic element of enhancing the economic viability of this state. The legislature further finds that farmland in urbanizing areas is often subjected to high levels of property taxation and benefit assessment, and that such levels of taxation and assessment encourage and even force the premature removal of such lands from agricultural uses. . . .
>
> It is therefore the purpose of the legislature to establish, with the enactment of RCW 84.34.300 through 84.34.380, another mechanism to protect agricultural land which creates an analogous system of relief from certain benefit assessments for farm and agricultural land.

Liberal construction of legislation with a view to effectuating legislative purpose is favored. 3 C. Sands, *Statutory Construction* § 60.02 (4th ed. 1974). Retroactive application in this case would further the strongly stated public purpose.

A statute may be applied retroactively where it is remedial in nature. *Macumber,* at 570. "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Miebach,* at 181. In the present case, no vested rights existed by the effective date of the statute. The assessments were neither approved nor was construction begun until over 1 year after the effective date. The bonds were not issued until at least 2 years after the statute passed. *See* AGO 5 (1976) (new tax exemption for open lands would not affect vested rights until a tax is actually collected).

We affirm the trial court's retroactive application of RCW 84.34.300–.380.

## II

Second, the City claims the respondents waived their right to contest the assessments by petitioning for the creation of ULID 5, and by not objecting to the assessment roll or pursuing statutory methods for appeal. The City also claims that respondents are estopped by their actions to make this challenge.

██ Waiver is defined as the intentional and voluntary relinquishment of a known right in existence at the time of the waiver. *Panorama Residential Protec. Ass'n v. Panorama Corp.,* 97 Wn.2d 23, 28, 640 P.2d 1057 (1982). The act of waiver must be inconsistent with any other intent than to waive the right. *Wagner v. Wagner,* 95 Wn.2d 94, 102, 621 P.2d 1279 (1980).

██ Estoppel requires three elements: (1) a statement or act inconsistent with the claim afterward asserted; (2) action by the other party based on the act or statement; and (3) injury to such other party if the first party is allowed to contradict or repudiate its act. *Emrich v. Connell,* 105 Wn.2d 551, 559, 716 P.2d 863 (1986); *Wilson v. Westinghouse Elec. Corp.,* 85 Wn.2d 78, 81, 530 P.2d 298 (1975). We find neither waiver nor estoppel applies to the specific acts or omissions of the respondents.

The respondents' signatures, or the signatures of their predecessors in interest, on the petition were made before RCW 84.34.300–.380 became law. They could not have waived rights created by these statutes by signing the petition because their right to an exemption was not yet in existence nor known to them. Estoppel also fails since the City did not act based on the signatures. The creation of the ULID 5 was by the resolution method, not the petition method, since the petition was procedurally defective.

The City also claims that respondents, by failing to challenge the assessment roll before it was approved, waived their rights to challenge or are estopped from challenging the assessment. This argument is based upon RCW 35.44, which describes the procedures for objecting to an assessment roll. Challenges must be made in writing prior to the

hearing on the assessment roll. RCW 35.44.080(1). An appeal must be made within 10 days of the effective date of the roll's confirmation. RCW 35.44.210. An assessment "cannot in any manner be contested or questioned in any proceeding by any person" unless these statutory procedures are followed. RCW 35.44.190.

We do not find respondents' failure to object to or appeal from the assessment roll constitute unequivocal acts or conduct evincing an intent to waive their challenge. The respondents believed they were exempt from the assessment. Their failure to challenge the assessment is an act *consistent* with their claim to an automatic exemption under RCW 84.34.320. Respondents' conduct likewise does not satisfy the first element of the estoppel test.

■ Further, we find RCW 35.44 does not apply to the specific type of challenge made by the respondents. They are not challenging the assessment roll itself. The exemption created by RCW 84.34.320 is not permanent; the assessments become due, with interest, once the property is no longer used as farmland or open space. RCW 84.34.330. Exempt properties are valued, and the assessments, although not charged to the owners, are nevertheless calculated and recorded during the period of the exemption. RCW 84.34.330. Because respondents are not challenging the valuation of their properties, the method of calculation, or their inclusion on the assessment roll, their challenge is not within the scope of RCW 35.44.

## III

Third, the City challenges the constitutionality of RCW 84.34.300–.380 on the basis of two different constitutional provisions: (1) loan of public credit—Const. art. 8, § 7; and (2) taking without just compensation—Const. art. 1, § 16 (amend. 9). In order to defeat a legislative enactment, the court must be persuaded of its unconstitutionality beyond a reasonable doubt. *Seattle–King Cy. Coun. of Camp Fire v. Department of Rev.*, 105 Wn.2d 55, 62, 711 P.2d 300 (1985).

■ The constitutional prohibition against municipal

loans of credit in Const. art. 8, § 7, involves at the outset an actual lending of money or credit to a private individual or corporation. *Higher Educ. Facilities Auth. v. Gardner,* 103 Wn.2d 838, 845–47, 699 P.2d 1240 (1985). In the case at hand neither the State nor the City is acting as a surety or guarantor for a loan to the landowners, so no loan of public credit is involved. Nor is there any transfer of municipal money to the landowners as a result of the statute. The exempted landowners received no benefit from ULID 5 improvements; the statute merely relieves the landowners from paying for something they have not received. The Legislature specifically found that special assessments for ULID's "do not generally benefit land which has been classified as open space farm and agricultural land". RCW 84.34.300. If any farm does receive some actual benefit, it may be assessed for the value of the benefit. RCW 84.34-.360. *See also Louthan v. King Cy.,* 94 Wn.2d 422, 617 P.2d 977 (1980) (direct purchase of development rights from individual landowners not prohibited by Const. art. 8, § 7).

The City also contends the exemption of certain landowners from ULID 5 assessments forces a municipality to raise the costs to the nonexempt landowners. The consequence of this, the City argues, is that nonexempt landowners are assessed an amount disproportionate to the benefit which they received from the improvements in violation of Const. art. 1, § 16 (amend. 9). RCW 84.34.320, however, does not require the City to take from the other landowners. The source of funds to replace the shortfall caused by the exemption is not addressed in the statute. Further, since the exempted properties are not receiving any benefit from ULID 5, any transfer of liability to those actually receiving the benefits would be a rational allocation of assessments.

The City finally raises an argument that RCW 84.34.320 deprives the City and other landowners of vested rights without due process. No person or municipality can acquire a vested right to taxes, or the right to insist upon the collection of taxes when levied. *Snow's Mobile Homes, Inc. v.*

*Morgan,* 80 Wn.2d 283, 288, 494 P.2d 216 (1972); *Gasaway v. Seattle,* 52 Wash. 444, 451, 100 P. 991 (1909). This argument is without merit.

## IV

Finally, the City appeals the denial of its motion to have the bondholders joined as necessary parties under Superior Court Civil Rule 19. The City claims the bondholder must be joined because the *action could impair the bondholders'* interests. CR 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

*See also* 3A J. Moore, *Federal Practice* ¶ 19.07–1[1] (1986).

The bondholders are not necessary parties. First, complete relief can be accorded between the present parties in the action. Second, although the bondholders could have a potential interest, the exemption of the respondents from the assessment does not impair that interest since the present action neither invalidates the bonds nor prevents the bondholders from seeking redress against the City if the City defaults for any reason.

In *Henry v. Oakville,* 30 Wn. App. 240, 633 P.2d 892 (1981), the court found the bondholders necessary parties to an action involving a bond issue. *Henry* is distinguishable, however, in that the action in *Henry* was brought to invalidate the entire bond issue based upon violation of the Open Public Meetings Act of 1971. *See* RCW 42.30. Therefore, the bondholders' bonds would have been rendered valueless. The present action only involves the liability of the respondents for their particular assessments within

ULID 5 and not the validity of the bond issue itself. The City remains liable on the bonds regardless of the outcome of this case. Moreover, any effect from the present action upon the value of the bonds would be indirect and uncertain.

We hold that the provisions of RCW 84.34.300–.380 were properly applied to this case. Summary judgment in favor of the respondents was proper. The trial court is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.