FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8:42

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Adoption of T.A.W. | No. 47364-0-II |
| R.B. and C.B., | |
| Respondents, | |
| v. | PUBLISHED OPINION |
| C.W., | |
| Appellant. | |

MAXA, J. — CW[1] is the biological father and CB is the biological mother of TAW, an Indian[2] child. CB is an Indian, but CW is not. CW appeals the trial court's order terminating his parental rights and allowing RB, CB's husband, to adopt TAW. CW argues that the trial court erred because it did not comply with applicable provisions in the federal and state versions of the Indian Child Welfare Act (ICWA). Specifically, he argues that 25 U.S.C. § 1912(d) and RCW 13.38.130(1) required CB and RB to show that active efforts were made to provide CW with remedial services and rehabilitative programs to prevent the breakup of the Indian family, and to

---

[1] This case is sealed. For confidentiality purposes, the parties in this case are referred to by only their initials.

[2] We use the term "Indian" in this opinion rather than "Native American" because the applicable statutes and cases all use "Indian" as a legal term of art. No disrespect is intended.

show that those programs were unsuccessful, before the trial court could grant a motion to terminate CW's parental rights.[3]

CB and RB argue that we should not consider this issue because CW did not raise it in the trial court. Further, they argue that ICWA statutes are inapplicable because (1) ICWA applies only to Indian parents and (2) CW abandoned TAW, which they claim negates ICWA's "active efforts" requirement under *Adoptive Couple v. Baby Girl*, ___ U.S. ___, 133 S. Ct. 2552, 186 L. Ed. 2d 729 (2013).

We hold that (1) CW can raise the "active efforts" requirement for the first time on appeal under RAP 2.5(a)(2) because the issue involves sufficiency of the evidence, (2) the plain language of 25 U.S.C. § 1912(d) and RCW 13.38.130(1) required CB and RB to show that active efforts were made to prevent the breakup of the Indian family consisting of CW and TAW before CW's parental rights could be terminated, (3) these provisions apply to both the Indian and non-Indian parents of an Indian child, and (4) *Adoptive Couple* does not eliminate ICWA's "active efforts" requirement under Washington law. Because CW and RB did not produce evidence of active efforts at the trial court, we reverse the trial court's termination and adoption orders and remand to the trial court for further proceedings consistent with this opinion.

---

[3] CW also assigns error to two of the trial court's findings of fact: (1) CW did not participate in the dissolution court proceedings or hearings, and (2) "on a number of occasions" CB brought TAW to CW's mother to allow visitation with both the grandmother and CW. Br. of Appellant at 23. However, neither finding has any effect on the outcome of this appeal, and on remand the findings will not be binding. Accordingly, we decline to address these assignments of error. *See Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 781-82, 275 P.3d 339 (2012).

FACTS

In December 2007, TAW was born to CW and CB. CB and TAW are both enrolled members of the Shoalwater Bay Tribe. CW is not an Indian. At the time of TAW's birth, CW and CB were married and lived together on the Shoalwater Bay Indian Reservation. CB testified that CW was not involved with any parenting of TAW when he was an infant. But CB's mother testified that CW cared for TAW while CB worked during this time.

In April 2008, CW's and CB's relationship deteriorated, and CB asked CW to leave their residence. At the time, CW and CB did not have an official parenting plan. CB testified that she brought TAW over to CW's mother's house once in 2008. CB's mother testified that she drove CB and TAW to visit CW at his mother's house twice in 2008. CW also testified that he had a few visits with TAW during this time.

In April 2009, CW visited CB's residence and tried to physically take TAW from CB's home. CB refused to let him take TAW. CB subsequently initiated dissolution proceedings and asked for a restraining order against CW, which was granted. In apparent violation of the restraining order, CW cared for TAW at least once in May 2009. CB later filed a petition to terminate the restraining order, based in part on the fact that CW was in drug treatment. CW did not attempt to visit TAW after May 2009. In early September 2009, the court granted the petition for the dissolution of CB's and CW's marriage. The court later issued a final parenting plan, which allowed CW only supervised visitation with TAW. However, CW did not arrange for any supervised visitation.

3

Shortly thereafter, CW was charged and convicted of theft of a motor vehicle, possession of a stolen vehicle, residential burglary, and second degree burglary. He was sentenced to a total of 36 months in prison. For a four month period, CW and CB attempted to work on their relationship while CW was in prison. Those efforts were unsuccessful, and thereafter CB began a relationship with RB. At unspecified times during CW's stay in prison, CW and CW's cellmate called CB to tell her that CW wanted to see TAW. At some time in 2011 or 2012, CB sent CW a book of pictures of TAW.

CW was released from prison in September 2012. At or around this time, the FBI questioned CB regarding a crime CW was then suspected of committing. CB petitioned the Shoalwater Tribal Court for a protection order for herself and TAW. CW appeared at the hearing and argued that the order was unnecessary because he had completed anger management classes. The tribal court granted the protection order, which required CW to attend six months of domestic violence classes before he could exercise his visitation rights.

CW subsequently was charged and convicted of second degree robbery. He was sentenced to 43 months in prison with an expected release date in September 2015.

CB and RB married in June 2013. They petitioned the trial court to terminate CW's parental rights and to allow RB to adopt TAW. Counsel for CB and RB asserted at the beginning of the trial that Washington law, including ICWA, applied to the case because TAW was an Indian child. However, neither party addressed the issue of whether ICWA required CB and RB to produce evidence that active efforts had been made to provide CW with remedial services and rehabilitative programs, and to show that those programs were unsuccessful.

A trial was held to determine whether CW's parental rights should be terminated. The trial court found that TAW was an Indian child and that the federal and state ICWA statutes applied to the proceedings. The trial court also found "beyond a reasonable doubt that the elements of the Indian Child Welfare Act have been met." Clerk's Papers (CP) at 93. The trial court then found by clear, cogent, and convincing evidence that CW had abandoned TAW, granted CB's and RB's petition to terminate CW's parental rights, and granted RB's petition to adopt TAW.

CW appeals.

## ANALYSIS

A.   COMPLIANCE WITH THE "ACTIVE EFFORTS" REQUIREMENT OF ICWA

1.   General Principles of ICWA

Congress enacted ICWA "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902. Congress recognized that "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children" and "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children." 25 U.S.C. § 1901(3)-(4). Washington also adopted its own version of ICWA, ch. 13.38 RCW, which parallels the federal version in many aspects.

ICWA applies to involuntary child custody proceedings involving an "Indian child." 25 U.S.C. § 1912(a); *see* RCW 13.38.020; RCW 13.34.040(3); RCW 26.33.040(1)(a). The statutes define "child custody proceeding" to include both termination of parental rights and adoptive placement. 25 U.S.C. § 1903(1)(ii), (iv); RCW 13.38.040(3)(b), (d). The statutes define "Indian child" as an unmarried person under age eighteen who is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. 25 U.S.C. § 1903(4); RCW 13.38.040(7). If ICWA applies, courts involved in child custody proceedings must follow a number of procedural and substantive requirements. *See, e.g.*, 25 U.S.C. § 1912; RCW 13.38.070, .130.

2. Active Efforts to Prevent Family Breakup

One of ICWA's requirements is that any party seeking an involuntary termination of a parent's rights to an Indian child must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d); RCW 13.38.130(1). CW argues on appeal that CB and RB failed to meet this requirement. We agree.

The trial court concluded "beyond a reasonable doubt that the elements of the Indian Child Welfare Act have been met." CP at 93. However, the record shows that CB and RB presented no evidence that active efforts were made to provide CW with remedial services and rehabilitative programs to prevent the breakup of the Indian family or that those programs were unsuccessful. In fact, the record shows that neither the trial court nor the parties ever discussed the active efforts requirement. And the trial court failed to enter factual findings showing that

the parties complied with 25 U.S.C. § 1912(d) and RCW 13.38.130(1). Accordingly, we hold that there was no factual basis for the trial court's conclusion that all the elements of ICWA had been met and that the trial court erred in making that conclusion.[4]

Because CB and RB failed to meet the "active efforts" requirement of ICWA, the only issues in this case are whether CW is precluded from arguing this failure on appeal or whether ICWA is inapplicable under the facts of this case.

B.      RAISING ISSUE FOR THE FIRST TIME ON APPEAL

CB and RB argue that CW cannot now argue that they failed to show active efforts to prevent the breakup of the Indian family because he failed to raise this argument at the trial court. CW admits that he failed to raise this argument in the trial court, but he argues that we should consider the issue under RAP 2.5(a)(2) because CB and RB failed to prove sufficient facts upon which the relief of termination and adoption could be granted. We agree with CW.

Under RAP 2.5(a), we generally do not review any claim of error not raised in the trial court. However, RAP 2.5(a)(2) provides that an appellant may raise for the first time on appeal the "failure to establish facts upon which relief can be granted." This exception applies where the proof of particular facts at trial is required to sustain a claim. *Mukilteo Ret. Apts., LLC v*

---

[4] CB and RB appear to argue that it was *CW's* burden to show the trial court what services would have aided him in being a better parent. But they cite to no authority for this proposition. And this argument is inconsistent with the plain language of ICWA, which states that it is the party moving for the involuntary termination of a parent's rights to an Indian child that must meet the statutory burden. 25 U.S.C. § 1912(d) (*"[a]ny party* seeking to effect . . . termination of parental rights . . . *shall satisfy the court* that active efforts have been made" (emphasis added)); RCW 13.38.130(1) (*"[a] party* seeking to effect . . . the involuntary termination of parental rights to an Indian child *shall satisfy the court* that active efforts have been made" (emphasis added)).

*Mukilteo Investors, LP*, 176 Wn. App. 244, 246, 310 P.3d 814 (2013), *review denied*, 179 Wn.2d 1025 (2014).

Here, 25 U.S.C. §1912(d) and RCW 13.38.130(1) provide that a party seeking to effect an involuntary termination of parental rights to an Indian child must show that active efforts were made to provide that parent with remedial services and rehabilitative programs to prevent the breakup of the Indian family, and that those programs were unsuccessful. CW claims that the trial court could not grant the requested relief – termination of his parental rights – because CB and RB failed to make that showing. Therefore, we hold that CW's argument involves the "failure to establish facts upon which relief can be granted," which can be raised for the first time on appeal under RAP 2.5(a)(2).[5]

C. APPLICATION OF ICWA TERMINATION PROVISIONS TO A NON-INDIAN PARENT

CB and RB argue that ICWA termination provisions do not apply to termination of CW's parental rights because he is a non-Indian. Specifically, they argue that "ICWA and the values it supports are not implicated in [the] termination of parental rights of a non-Indian father to an Indian child who is placed with Indian parents." Br. of Resp't at 9. We disagree because the

---

[5] In claiming that this argument cannot be made for the first time on appeal, CB and RB also assert that the record does not indicate that remedial services could have prevented the termination and that the burden was on CW to show the trial court what services might have aided him in being a better parent. But this argument relates to the merits of the issue, and they fail to explain how their position prevents CW from claiming error on appeal.

plain language of ICWA states that its provisions apply to the termination of parental rights to an Indian child without regard to a parent's status.[6]

1.    Principles of Statutory Construction

Statutory interpretation is a matter of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). Similarly, issues regarding ICWA's applicability involve questions of law that we review de novo. *In re Custody of C.C.M.*, 149 Wn. App. 184, 194, 202 P.3d 971 (2009).

The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *Lowy v. Peacehealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). When the statute at issue or a related statute includes an applicable statement of purpose, the statute should be read in a manner consistent with that stated purpose. *See Protect the Peninsula's Future v. Growth Mgmt. Hr'gs Bd.*, 185 Wn. App. 959, 969-70, 344 P.3d 705 (2015).

If the plain meaning of a statute is unambiguous, we must apply that plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. We do not rewrite unambiguous statutory language under the guise of interpretation.

---

[6] CW frames the issue as whether he has "standing" to challenge the termination of his parental rights under ICWA. Because CW is TAW's biological parent, he clearly had standing and a statutory right to participate in the termination proceedings and this appeal. *See* RCW 13.34.110(1), .090(1); *see also In re Dependency of D.M.*, 136 Wn. App. 387, 399, 149 P.3d 433 (2006). The issue here is not standing, but whether ICWA termination provisions apply to CW.

*Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). And we do not add language to an unambiguous statute even if we believe the legislature "intended something else but did not adequately express it." *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002).

2. Plain Statutory Language

25 U.S.C. § 1912(d) states:

Any party seeking to effect a . . . termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Similarly, RCW 13.38.130(1) states:

A party seeking to effect ... the involuntary termination of parental rights to an Indian child shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Both statutes plainly state that they apply to any termination of parental rights to an Indian child. Neither statute states that the parent facing termination must be Indian or makes any reference to the parent's status.

Further, chapter 13.34 RCW, which contains the Washington statutes regarding termination of parental rights, includes a provision regarding the application of ICWA. RCW 13.34.040(3) states that "[i]f the child is an Indian child chapter 13.38 RCW [ICWA] shall apply." [7] This statute unequivocally provides that under Washington law, ICWA applies in *all*

---

[7] Chapter 26.33 RCW, which contains the Washington statutes regarding adoption, includes an identical provision regarding the application of ICWA. RCW 26.33.040(1)(a) states that "[i]f the child is an Indian child, chapter 13.38 RCW [ICWA] shall apply."

termination cases in which the child is an Indian. RCW 13.34.040(3) does not condition the application of ICWA on whether the parent also is an Indian.

Finally, both the federal statement of policy and the Washington statement of intent for ICWA focus on the status of the child. 25 U.S.C. § 1902 states, "The Congress hereby declares that it is the policy of this Nation *to protect the best interests of Indian children* and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families." (Emphasis added.) RCW 13.38.030 states, "The legislature finds that the state is committed to protecting the essential tribal relations and *best interests of Indian children* by promoting practices designed to prevent out-of-home placement of Indian children that is inconsistent with the rights of the parents." (Emphasis added.) Neither statute expressly states a policy to protect only *Indian* parents of Indian children. *See also* 25 U.S.C. § 1901(3) (stating that the United States has an interest in protecting Indian children, with no mention of Indian parents).

Nevertheless, CB and RB argue that ICWA's "values" are not implicated in the termination of the parental rights of a non-Indian father to an Indian child who is placed with Indian parents. Br. of Resp't at 9. CB and RB appear to argue that ICWA is designed to protect only Indian families, which they imply consist of Indian parents and their Indian children. We reject this argument.

The federal ICWA provisions regarding congressional findings and policy do reference Indian families. 25 U.S.C. §§ 1901(4), 1902. Further, both 25 U.S.C. § 1912(d) and RCW 13.38.130(1) state that active efforts must be made to prevent the breakup of the "Indian family."

11

However, both the federal and state ICWA plainly apply to involuntary terminations involving an Indian child, regardless of the status of the parents. 25 U.S.C. § 1912(d); RCW 13.38.130(1). There is no indication in either statute that an "Indian family" must have an Indian parent. The argument made by CB and RB would require us to add language to both statutes, which we decline to do. *See Kilian*, 147 Wn.2d at 20. Accordingly, we reject CB and RB's argument that applying ICWA termination provisions to a non-Indian parent would be inconsistent with the values of ICWA.

The federal ICWA also expresses a concern for the interests of Indian tribes. 25 U.S.C. § 1901(3) states that "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. § 1901(5) states that the states "have often failed to recognize the essential tribal relations of Indian people." *See also* RCW 13.38.030 (referencing in the statement of intent the interests of an Indian child's tribe). But nothing in the language of either 25 U.S.C. § 1912(d) or RCW 13.38.130(1) suggests that ICWA applies only if the parent is a tribal member. Further, because Washington statutes expressly state that ICWA applies when an Indian child is involved, under Washington law an Indian child's cultural tie to a tribe is irrelevant as to whether ICWA applies. *In re Parenting & Support of Beach*, 159 Wn. App. 686, 692, 246 P.3d 845 (2011).

Here, it is undisputed that TAW is an Indian child. Therefore, we hold that the provisions of 25 U.S.C. §1912(d) and RCW 13.38.130(1) apply to the termination of CW's parental rights even though CW is not an Indian.

### D. APPLICATION OF ICWA WHEN THE PARENT ABANDONS THE CHILD

CB and RB argue that ICWA's termination provisions do not apply to the termination of CW's parental rights because he abandoned TAW. Specifically, they argue that the United States Supreme Court's decision in *Adoptive Couple* precludes the application of the requirements of 25 U.S.C. § 1912(d) and RCW 13.38.130(1) because CW abandoned TAW. We disagree.

#### 1. *Adoptive Couple* Decision

In *Adoptive Couple*, the United States Supreme Court addressed a situation where an Indian child's biological father, a registered member of the Cherokee Nation, voluntarily relinquished his parental rights to the child's non-Indian mother before the child's birth. 133 S. Ct. at 2558. The mother later put the child up for adoption, and a non-Indian couple began adoption proceedings. *Id.* The biological father contested the proceedings, arguing that he believed he was only relinquishing his rights as to the child's mother. *Id.* The trial court determined that ICWA applied to the proceedings and that 25 U.S.C. § 1912(f)[8] barred the termination of the father's parental rights. *Id.* at 2559. Accordingly, the trial court denied the adoptive couple's petition for adoption and awarded custody to the father. *Id.* The South Carolina Supreme Court affirmed the trial court's decision, but it also affirmed the trial court on

---

[8] 25 U.S.C. § 1912(f) states, "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

13

the basis that the adoptive couple had failed to meet the active efforts requirement of 25 U.S.C. §
1912(d). *Id.*

The United States Supreme Court reversed. The Court first determined that the text of
ICWA demonstrated that it was designed primarily to counteract the unwarranted *removal* of
Indian children from Indian families. *Id.* at 2561. In light of this purpose, the Court concluded
that when "the adoption of an Indian child is voluntarily and lawfully initiated by a non-Indian
parent with sole custodial rights, the ICWA's primary goal of preventing the unwarranted
removal of Indian children and the dissolution of Indian families is not implicated." *Id.* Because
the Indian father never had legal or physical custody of the child, the Court held that 25 U.S.C. §
1912(f) did not apply. *Id.* at 2562.

The Court next determined that 25 U.S.C. § 1912(d)'s requirement that remedial services
be provided to prevent the breakup of the Indian family did not apply where an Indian family's
"breakup" would not be caused by the termination of the parent's rights. *Id.* at 2562. The Court
stated:

> The term "breakup" refers in this context to "[t]he discontinuance of a relationship,"
> American Heritage Dictionary 235 (3d ed. 1992), or "an ending as an effective
> entity," Webster's 273 (defining "breakup" as "a disruption or dissolution into
> component parts: an ending as an effective entity"). But when an Indian parent
> abandons an Indian child prior to birth and that child has never been in the Indian
> parent's legal or physical custody, there is no "relationship" that would be
> "discontinu[ed]" — and no "effective entity" that would be "end[ed]" — by the
> termination of the Indian parent's rights. In such a situation, the "breakup of the
> Indian family" has long since occurred, and § 1912(d) is inapplicable.
>
> Our interpretation of § 1912(d) is, like our interpretation of § 1912(f), consistent
> with the explicit congressional purpose of providing certain "standards for the
> *removal* of Indian children from their families." In addition, the [Bureau of Indian
> Affair's] Guidelines confirm that remedial services under § 1912(d) are intended

14

"to alleviate the need to *remove* the Indian child from his or her parents or Indian custodians," not to facilitate a *transfer* of the child *to* an Indian parent.

*Id.* at 2562-63 (internal citations omitted).

At least one court has applied the *Adoptive Couple* analysis in a case involving the parent's apparent abandonment of the Indian child when that parent never had custody of the child. In *In re J.S.*, the Montana Supreme Court addressed a situation where an Indian father failed to obtain legal or physical custody of his child and failed to establish a relationship with the child until the child was eight years old. 2014 MT 79, 374 Mont. 329, 321 P.3d 103, 111-12. After the Indian father made initial contact with the child, the father refused to complete remedial parenting classes and indicated on several occasions that he wanted to relinquish his parental rights. *Id.* Based on the nonexistent relationship between the Indian father and his child, as well as their limited personal contact, the court held that the breakup of the Indian family had long since occurred and that 25 U.S.C. § 1912(d) was inapplicable. *Id.*

2.    Inapplicability of *Adoptive Couple*

We hold that the Court's analysis in *Adoptive Couple* is inapplicable here for two reasons. First, the facts here are completely different than in *Adoptive Couple*, where the father never had custody of the Indian child and expressly relinquished his parental rights. 133 S. Ct. at 2558. *See also J.S.*, 321 P.3d at 112 (not applying ICWA when father never obtained legal or physical custody of child and indicated that he wanted to relinquish his parental rights). Here, CW had both legal and physical custody of TAW for some period of time, and there is no evidence in the record that CW ever wanted to or was willing to terminate his parental rights to TAW. Despite CW's incarceration in 2009 and in 2011, CW continued to express an interest in

15

maintaining a relationship with TAW at a later date. As a result, the reasoning of *Adoptive Couple* is inapplicable – there still is a family that would be broken up by termination of CW's parental rights.

Second, *Adoptive Couple* involves only an interpretation of the federal ICWA and specifically 25 U.S.C. § 1912(d) and (f). Although the language of RCW 13.38.130(1) and (3) is almost identical to their federal counterparts, we are not bound by *Adoptive Couple* in the interpretation of Washington law. This is significant because, as noted above, Washington has enacted additional statutes that govern the applicability of ICWA.

Chapter 13.34 RCW, which contains the Washington statutes regarding termination of parental rights, unequivocally states that ICWA applies in all termination proceedings involving Indian children. RCW 13.34.040(3) states that "[i]f the child is an Indian child chapter 13.38 RCW [ICWA] *shall apply*." (Emphasis added.) Chapter 26.33 RCW, which contains the Washington statutes regarding adoption, includes an identical provision regarding the application of ICWA. RCW 26.33.040(1)(a) states that "[i]f the child is an Indian child, chapter 13.38 RCW [ICWA] *shall apply*." (Emphasis added.) These statutes do not provide an exception to the applicability of ICWA when a parent abandons an Indian child.

We decline to apply *Adoptive Couple* to prevent the application of ICWA under the facts of this case. We hold that under Washington law, the "active efforts" requirement of RCW 13.38.130(1) applies to a parent who has had custody of an Indian child and has not expressly relinquished parental rights even if that parent at some point in time has abandoned the child.

We reverse the trial court's termination and adoption orders and remand to the trial court for further proceedings consistent with this opinion.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.