# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 925, a labor organization, | No.  49726-3-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF EARLY LEARNING, a state agency, and EVERGREEN FREEDOM FOUNDATION, a non-profit corporation, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, P.J. — Service Employees International Union Local 925 (SEIU 925)

appeals an order denying SEIU's motion for an injunction to prohibit the Washington State

Department of Children, Youth, and Families,[1] Department of Early Learning & Child Care

(Department) from releasing certain documents requested under the Public Records Act (PRA).

The Freedom Foundation (Foundation) requested a list of names and contact information for

child care providers in Washington.  SEIU 925, the labor union representing the child care

providers, filed a motion to enjoin the Department from disclosing the provider's information.

---

[1] The Washington State Department of Children, Youth, and Families was formerly known as the
Washington State Department of Social and Health Services.  The pleadings in this matter
reference the Department of Social and Health Services.

The trial court denied SEIU 925's motion and SEIU 925 now appeals, arguing that the exemptions created by RCW 42.56.640[2] and RCW 43.17.410,[3] as established through voter Initiative 1501 (I-1501), apply retroactively, and also that former RCW 74.04.060(4)[4] exempts records that are to be used for political purposes.

We hold that RCW 42.56.640 and RCW 43.17.410, do not apply retroactively and that former RCW 74.04.060(4) does not exempt the records requested by the Foundation. Consequently, we affirm.

FACTS

The Department administers a program that allows eligible low-income families to receive a subsidy for child care expenses. Families may choose to utilize either a licensed or a license-exempt care provider.

Licensed family care providers operate independent home businesses and are monitored and licensed by the Department. License-exempt family child care providers are informal care

---

[2] RCW 42.56.640 exempts inspection of "sensitive personal information" of certain "vulnerable individuals" and their "in-home caregivers," and defines those terms.

[3] RCW 43.17.410 states:
> (1) To protect vulnerable individuals and their children from identity crimes and other forms of victimization, neither the state nor any of its agencies shall release sensitive personal information of vulnerable individuals or sensitive personal information of in-home caregivers for vulnerable populations, as those terms are defined in RCW 42.56.640.

[4] The legislature amended RCW 74.04.060 in 2018 by adding subsection (b) to RCW 74.04.060(1).

providers exempt from licensing requirements and who usually provide care in the children's home or in their own home.[5]

SEIU 925 represents both licensed and license-exempt providers. The providers pay dues to SEIU 925 for union representation.

The Foundation is a nonprofit organization. One of the Foundation's purposes is to educate public employees about their rights to "opt out" of a union. Clerk's Papers (CP) at 24. The Foundation has previously contacted SEIU 925 members regarding their rights.

The Department provides contact information for licensed family child care providers on a Department website. The information includes the names and telephone numbers of the licensed care providers, but the website does not list information for license-exempt providers.

On November 2, 2016, the Foundation submitted a PRA request to the Department seeking contact information for all licensed and license-exempt child care providers. The Foundation sought "the first name, last name, work mailing address, and work email address" of the providers. CP at 909. In its request, the Foundation stated that it would not use the information for commercial purposes, but planned to use the information to inform the providers of their constitutional and statutory rights regarding union membership and representation. The Department informed SEIU 925 that it would release the providers' contact information to the Foundation on November 22 if SEIU 925 did not obtain a court order enjoining the release.

---

[5] An exempt provider may provide care in their own home if related to the child.

On November 8, 2016, six days after the Foundation submitted its PRA request,

Washington voters approved I-1501.[6]  The initiative's stated intent was to protect the safety and

security of seniors and vulnerable individuals by

> (1) increasing criminal penalties for identity theft targeting seniors and vulnerable individuals; (2) increasing penalties for consumer fraud targeting seniors and vulnerable individuals; and (3) prohibiting the release of certain public records that could facilitate identity theft and other financial crimes against seniors and vulnerable individuals.

CP at 299.

The initiative also added new provisions to the statutes governing agency administration

and to the PRA.  One provision, later codified as RCW 43.17.410(1), prohibited state agencies

from releasing sensitive personal information of vulnerable individuals or in-home caregivers for

vulnerable populations.  LAWS OF 2017, ch. 4, § 10.  Another provision, later codified as RCW

42.56.640(2), added language to the PRA stating that "sensitive personal information of in-home

caregivers for vulnerable populations is exempt from inspection and copying."  LAWS OF 2017,

ch. 4, § 8.  The initiative's provisions became effective on December 8, 2016.  *See* RCW

43.17.410; *see also* RCW 42.56.640.

On November 16, 2016, SEIU 925 filed a complaint for declaratory and injunctive relief

in superior court seeking to enjoin the Department from releasing the records to the Foundation

---

[6] *See* https://results.vote.wa.gov/results/20161108/State-Measures-Initiative-Measure-No-1501-concerns-seniors-and-vulnerable-individuals.html (last visited Sep. 7, 2018).

under former RCW 74.04.060(4).[7] SEIU 925 also filed a motion for a temporary restraining

order (TRO) to prevent the release of the information. SEIU 925 argued that the Department

was precluded from disclosing the records because former RCW 74.04.060(4) prevented the

disclosure of lists or names of providers for both commercial as well as political purposes, and

also argued that the information qualified for a PRA exemption.

A superior court commissioner heard arguments on SEIU 925's motion for a TRO but did

not rule on the motion. Instead, the commissioner asked the Foundation and the Department to

refrain from releasing the records on November 22, and to schedule a hearing on SEIU 925's

request for a preliminary injunction as soon as possible. The parties agreed.

On December 2, SEIU 925 filed its motion for preliminary injunction and scheduled a

hearing for December 9th. SEIU 925 restated many of the arguments it made in its TRO motion

and also included additional arguments for injunctive relief. SEIU 925 argued that the

information requested by the Foundation was prohibited by the laws established in I-1501, which

were to become effective on December 8th, the day before the scheduled hearing on SEIU's

preliminary injunction.

---

[7] Former RCW 74.04.060(4) provided:
> It shall be unlawful, except as provided in this section, for any person, body,
> association, firm, corporation or other agency to solicit, publish, disclose, receive,
> make use of, or to authorize, knowingly permit, participate in or acquiesce in the
> use of any lists or names for commercial or political purposes of any nature.

In response, the Foundation argued that SEIU 925's interpretation of former RCW 74.04.060(4) was unconstitutional, that SEIU 925 improperly read 74.04.060(4) out of context from the other sections of the chapter,[8] and that I-1501 was not retroactive in nature.

The Department responded and asserted that it was not authorized to withhold the records because the Foundation's use of the records was not for commercial purposes and that it was not authorized to apply the disclosure exemptions established in I-1501 because the Foundation made its record request before the law took effect. The Department also argued the "list or names" referenced in former RCW 74.04.060(4) pertained only to applicants and recipients of public assistance and not to providers. CP at 899.

On December 9, the trial court heard oral argument on SEIU 925's motion for preliminary injunction. The court denied SEIU's motion for a preliminary injunction, ruling that

---

[8] Other sections of former RCW 74.04.060 provide:
> (1)(a) . . . [T]he county offices and their respective officers and employees are prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications, except for purposes directly connected with the administration of the programs of this title . . . except for the right of any individual to inquire of the office whether a named individual is a recipient of welfare assistance and such person shall be entitled to an affirmative or negative answer.
> . . . .
> (c) The department shall review methods to improve the protection and confidentiality of information for recipients of welfare assistance who have disclosed to the department that they are past or current victims of domestic violence or stalking.
> . . . .
> (2) The county offices shall maintain monthly at their offices a report showing the names and addresses of all recipients in the county receiving public assistance under this title, together with the amount paid to each during the preceding month.

SEIU 925 had not shown there was a likelihood of success on the merits of any of its claims. The court ruled that former RCW 74.04.060(4) did not apply to exempt disclosure of providers' lists or names and that I-1501 did not apply retroactively. The court entered a stay preventing the release of the records pending appeal.

SEIU 925 appeals the trial court's order denying its motion for a preliminary injunction.

## ANALYSIS

SEIU 925 argues that the trial court erred by denying its request for injunctive relief where the evidence establishes that SEIU 925 has a clear legal right to the protection of the requested records, where I-1501 applies retroactively, and where former RCW 74.04.060(4) prohibited the Department from disclosing the records. We disagree.

### I. STANDARD OF REVIEW

We generally review injunction decisions for an abuse of discretion.[9] *Blair v. Washington State Univ.*, 108 Wn.2d 558, 564, 740 P.2d 1379 (1987). However, when a trial court's order is based solely on documentary evidence and memoranda of law, our review is de novo. *Limstrom v. Ladenburg*, 136 Wn.2d 595, 612, 963 P.2d 869 (1998). Additionally, we review both statutory interpretation and retroactivity de novo. *See In re Estate of Haviland*, 177 Wn.2d 68, 75, 301 P.3d 31 (2013).

---

[9] Generally, orders on preliminary injunctions are reviewed for an abuse of discretion. However, some court decisions interpreting injunction orders under the PRA have held that the proper standard of review for injunctions issued under the PRA is de novo. *See SEIU Healthcare 775NW v. Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 391, 377 P.3d 214 (2016). Regardless, the underlying review of any decision under the PRA is a question of law when based entirely on documentary evidence. *See Robbins Geller Rudman & Dowd LLP v. Office of Att'y Gen.*, 179 Wn. App. 711, 719-20, 328 P.3d 905 (2014).

Because this case is an injunction decision based entirely on documents and memorandum of law, and involving only questions of law, our review here is de novo.

II. APPLICABILITY OF I-1501

SEIU 925 argues that the trial court was required to apply the provisions of I-1501 to prohibit the Department from disclosing the records because the laws prohibiting disclosure were in effect at the time it rendered its decision denying the preliminary injunction. We disagree.

A.    *PRA Principles*

The PRA mandates the broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Under RCW 42.56.070(1), a government agency must disclose public records upon request unless an exemption applies. *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). RCW 42.56.030 expressly requires that the PRA be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." Thus, we liberally construe the PRA in favor of disclosure. *West v. Port of Olympia*, 183 Wn. App. 306, 311, 333 P.3d 488 (2014).

A party other than a government agency attempting to prevent the disclosure of public records under the PRA may seek an injunction. *Ameriquest*, 177 Wn.2d at 487. We review injunctions issued under the PRA de novo. *Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 791, 418 P.3d 102 (2018). The party seeking to prevent disclosure bears the burden of establishing that a PRA exemption applies. *Ameriquest*, 177 Wn.2d at 486. If an exemptions applies, we can enjoin the release of a public record only if disclosure "'would clearly not be in the public interest and would substantially and irreparably damage any person, or . . . vital governmental

8

functions.'" *Lyft*, 190 Wn.2d at 791 (quoting *Morgan v. City of Federal Way*, 166 Wn.2d 747, 756-57, 213 P.3d 596 (2009)). The injunction standard requires a showing on both elements. *Lyft*, 190 Wn.2d at 791.

Here, in order to determine whether the trial court properly denied SEIU 925's request for injunction, we must first examine whether the statutes established through I-1501 apply retroactively or prospectively.

B.      *Retroactivity Principles*

Generally, statutory amendments are presumed to operate prospectively. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 507, 198 P.3d 1021 (2009). The presumption of prospective application is overcome only when the legislature explicitly provides for retroactive application or the amendment is curative or remedial. *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 223, 173 P.3d 885 (2007). When analyzing whether a voter initiative explicitly provides for retroactivity, the test is whether the initiative "fairly convey[s]" the voters' intent that the initiative be applied retroactively. *State v. Rose*, 191 Wn. App. 858, 861, 365 P.3d 756, (2015).

If there is no voter intent to apply the initiative retroactively, we next determine whether the statute is curative or remedial. *Densley*, 162 Wn.2d at 223. A curative statute clarifies or makes a technical correction to an ambiguous statute. *Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002). A remedial statute relates to practices, procedures, or remedies and does not affect a substantive or vested right. *In re Marriage of Hawthorne*, 91 Wn. App. 965, 968, 957 P.2d 1296 (1998).

C.     *No Retroactive Application*

     1. *No Voter Intent for Retroactivity*

The first question we consider in examining whether the statute applies retroactively is whether I-1501 fairly conveys the voters' intent that the initiative be applied retroactively. To ascertain legislative (or here, voter) intent, we generally look for express language showing retroactive application. *See City of Ferndale v. Friberg*, 107 Wn.2d 602, 605, 732 P.2d 143 (1987). However, legislative intent may also be inferred from other evidence, such as the use of past tense in the language of the statute, or a legislative statement of a strong public policy that would be served by retroactive application. *City of Ferndale*, 107 Wn.2d at 605.

SEIU 925 cites to *State v. Rose*, 191 Wn. App. at 868, and points to the policy language contained in I-1501 to argue that the voters' intent was for the laws to apply retroactively. I-1501 included an overarching intent section which stated that "[i]t is the intent of this initiative to protect the safety and security of seniors and vulnerable individuals by . . . (3) prohibiting the release of certain public records that could facilitate the identity theft of other financial crimes against seniors and vulnerable individuals." CP at 299. The initiative also contained another section pertaining to the intent of prohibiting the release of public records of caregivers. The section stated that "[s]ensitive personal information about in-home caregivers for vulnerable populations is protected because its release could facilitate identity crimes against seniors, vulnerable individuals, and the other vulnerable populations that these caregivers serve." CP at 304.

In *State v. Rose*, the court reviewed a voter initiative that decriminalized adult marijuana use. 191 Wn. App. at 868 (quoting I-502, Part 1, Sec. 1). The initiative included a statement of

intent that said, "The people intend to stop treating adult marijuana use as a crime and try a new approach." *Rose*, 191 Wn. App. at 868. The *Rose* court concluded that this language was sufficient to express an intent of the voters to stop prosecutions, even those in progress, for adult marijuana use. *Rose*, 191 Wn. App. at 869.

Here, the language in I-1501 is not as direct as the language in *Rose*. Despite the strong policy language that seniors and vulnerable adults be protected, I-1501 contains no suggestion that the exemption provisions would apply to PRA requests prior to the effective day of the act. There is no clear policy statement showing voter intent to prevent the disclosure of provider information in a retroactive manner. *See Rose*, 191 Wn. App. at 868.

Because I-1501 does not contain an express statement regarding retroactive application, and because the language otherwise does not fairly convey the voters' intent to apply the exemptions retroactively, the next question is whether I-1501 is curative or remedial. *See City of Ferndale*, 107 Wn.2d at 602.[10]

2. *Not Curative or Remedial*

SEIU 925 does not brief the issue of whether the statutes at issue are remedial or curative in nature and affirmatively states that it "does not rely" on whether the statutes are curative or remedial to support their argument that the statutes apply retroactively. Reply Br. at 23. The

---

[10] SEIU 925 argues that *City of Ferndale*, 107 Wn.2d at 602, supports its argument that an initiative is retroactive when a strong policy statement exists that would be served by retroactive application. However, the court in *City of Ferndale* considered the initiative in that case to be retroactive when the initiative used past tense language and when the initiative was remedial in nature. Accordingly, *City of Ferndale* is distinguishable from this case as I-1501 uses no past tense language and as shown, is not remedial in nature.

Foundation argues that access to nonexempt public records is a substantive right and that the new statutes "'affect'" that right and therefore are not curative or remedial. Br. of Resp't (Foundation) at 34. The Department joins the Foundation and argues that the trial court correctly concluded that the statutes were neither curative nor remedial. We hold that the statutes at issue are not curative or remedial.

A curative amendment clarifies or makes a technical correction to an ambiguous statute. *In re Flint*, 174 Wn.2d 539, 546, 277 P.3d 657 (2012). A remedial change relates to practices, procedures, or remedies without affecting substantive or vested rights. *In re Flint*, 174 Wn.2d at 546. A vested right entitled to protection under the due process clause "'must be something more than a mere expectation based upon an anticipated continuance of the existing law; it must have become a title, legal or equitable, to the present or future enjoyment of property, a demand, or a legal exemption from a demand by another.'" *Dragonslayer, Inc. v. Washington State Gambling Comm'n*, 139 Wn. App. 433, 449, 161 P.3d 428 (2007) (quoting *Caritas Servs. v. DSHS*, 123 Wn.2d 391, 414, 869 P.2d 28 (1994)). A vested right in public documents is created when a request for the public records is made. *See Dragonslayer*, 139 Wn. App. at 449.

Here, the statutes do not clarify or correct another statute and therefore are not curative. Also, the statutes are not remedial because they affect a vested right. The Foundation requested the records prior to the enactment of the statutes that contain applicable PRA exemptions. Therefore, the Foundation obtained a vested right in the requested records when it made its initial request. *Dragonslayer*, 139 Wn. App. at 449. The application of the new statutes would clearly affect the Foundation's right to the records, and therefore the new statutes cannot apply retroactively to prohibit the Department from disclosing the records to the Foundation.

Because the statues have no express provision for retroactivity and are not curative or remedial in nature, the statutes cannot apply retroactively. As such, SEIU 925 has not overcome the presumption that the statutes apply prospectively only.[11]

D.      *Law in Effect at Time of Request*

SEIU 925 also argues that the trial court erred by failing to apply the law in effect at the time the trial court rendered its decision. SEIU 925 asserts that because the new statutes became effective prior to the day the court rendered its decision, the court was bound to enter the injunction prohibiting the Department from releasing the records. The Department argues that the statutes were not in effect when the Foundation made its request for records, and therefore, the Department is obligated to disclose the information. We agree with the Department.

Generally, a court is to apply the law in effect at the time it renders its decision. *In re Dependency of A.M.M.*, 182 Wn. App. 776, 789, 332 P.3d 500 (2014). However, when a statute affecting the disclosure of records is amended after a party has made a records request and where the statute is not retroactive in nature, the controlling law is the law in existence at the time the request was made. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 375 n. 2, 374 P.3d 63 (2016), *review denied*, 189 Wn.2d 1019 (2017).

Here, the Foundation requested the records prior to enactment of the statutes. As discussed above, the statutes also do not apply retroactively. Accordingly, because the statutes are not retroactive, and because the controlling law in this case is the law in effect at the time that

---

[11] Because we affirm the trial court's determination that the statutes do not operate retroactively here, we do not address the Foundation's argument that the retroactive application of the statutes creates ex post facto problems with the criminal provisions created in I-1501.

the Foundation made its request for the records, the trial court did not err by denying the injunction on this basis.

### III. PUBLIC ASSISTANCE STATUTE

SEIU 925 argues that the trial court erred by denying injunctive relief because former RCW 74.04.060(4) prohibited the Department from releasing records of any lists or names if the information is sought for political purpose. We disagree.

1.    *Legal Principles*

The PRA establishes an affirmative duty to disclose public records unless the records fall within specific statutory exemptions or prohibitions. *Progressive Animal Welfare Soc. v. Univ. of Washington*, 125 Wn.2d 243, 258, 884 P.2d 592 (1994). We first determine whether the requested records are within one of the PRA's exemptions or within some other statute which exempts or prohibits disclosure of specific information or records. *Progressive Animal Welfare Soc.*, 125 Wn.2d at 258. We interpret exceptions to the PRA narrowly. *See* RCW 42.56.030.

Statutory interpretation is a matter of law reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Jametsky*, 179 Wn.2d at 762. To determine legislative intent, we first look to the plain language of the statute. *Jametsky*, 179 Wn.2d at 762. We consider the language of the provision in question, the context of the statute in which the provision is found, and related statutes. *In re Adoption of T.A.W.*, 188 Wn. App. 799, 809, 354 P.3d 46 (2015), *aff'd* 186 Wn.2d 828 (2016). When the statute at issue or a related statute includes an applicable statement of purpose, we interpret statutory language in a manner consistent with that stated purpose. *In re Adoption of T.A.W.*, 188 Wn. App. at 809.

14

To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and we interpret them in the context of the statute. *AllianceOne Receivables Mgmt., Inc. v. Lewis*, 180 Wn.2d 389, 395-96, 325 P.3d 904 (2014). If the plain meaning of a statute is unambiguous, we apply the plain meaning as an expression of legislative intent without considering extrinsic sources. *Jametsky*, 179 Wn.2d at 762. We do not rewrite unambiguous statutory language under the guise of interpretation. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006).

2.      *Former RCW 74.04.060(4) Does Not Prevent Disclosure of Provider Information*

Former RCW 74.04.060 provides:

(1)(a) For the protection of *applicants and recipients*, the department, the authority, and the county offices and their respective officers and employees are prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications, except for purposes directly connected with the administration of the programs of this title . . . except for the right of any individual to inquire of the office whether a named individual is a recipient of welfare assistance and such person shall be entitled to an affirmative or negative answer.

. . . .

(c) The department shall review methods to improve the protection and confidentiality of information *for recipients of welfare assistance* who have disclosed to the department that they are past or current victims of domestic violence or stalking.

. . . .

(2) The county offices shall maintain monthly at their offices a report showing the names and addresses of all *recipients* in the county receiving public assistance under this title, together with the amount paid to each during the preceding month.

. . . .

(4) It shall be unlawful, except as provided in this section, for any person, body, association, firm, corporation or other agency to solicit, publish, disclose, receive, make use of, or to authorize, knowingly permit, participate in or acquiesce

in the use *of any lists or names* for commercial or political purposes of any nature. The violation of this section shall be a gross misdemeanor.

(Emphasis added.)

SEIU 925 argues that former RCW 74.04.060(4) falls within the "other statute" exemption to the PRA and prohibits disclosure of any lists of names if requested for a political purpose, not just the list of names of applicants and recipients of public assistance. SEIU 925 asserts that former RCW 74.040.060(4) is not a subset of other sections of former RCW 74.04.060 but rather a separate provision that addresses a different category of records and that section (4) is not limited only to protecting the lists and names of applicants and recipients of public assistance from disclosure. SEIU 925 also argues that the legislature's different word choice in former RCW 74.04.060(4) and other subsections of RCW 74.04.060 requires us to interpret the statute to mean that the Department must not disclose lists or names of *any* persons when the lists are sought for political purposes. We disagree.

Former RCW 74.04.060(1)(a) prohibits the Department from disclosing any records of "applicants and recipients" for the protection of those applicants and recipients. Further, under Former RCW 74.04.060(1)(c), the Department is tasked with reviewing methods to "improve the protection and confidentiality of information for "recipients" who have been victims of abuse. Former RCW 74.04.060(2) requires the Department to maintain a report of the names of recipients receiving public assistance.

A plain language interpretation of a statute looks not only to the provision in question, but to other related provisions that illuminate legislative intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Former RCW 74.00.060(4), when taken in

16

context with the related statutes, does not prohibit the disclosure of all lists or names of any individuals when such information is requested for commercial or political purposes. Reading the subsections of former RCW 74.04.060 narrowly, as we must, we see nothing in former RCW 74.04.060 showing that the legislature intended subsection 4 to pertain to any lists or names of any individual. Rather, when read in context with the other portions of the statute, former RCW 74.04.060(4) applies to the lists and names only of recipients or applicants of public assistance when the lists or names are sought for a political purpose.

Former RCW 74.04.060(4) works to establish that information of applicants and recipients is not disclosable for commercial or political uses. Former RCW 74.04.060(4) does not render other sections of chapter 74.04 RCW superfluous but rather adds more protection to the applicant and recipient information. Additionally, adopting SEIU 925's interpretation of former RCW 74.04.060(4) that it exempts provider information from disclosure, would essentially render unnecessary the new exemptions carved out through I-1501.

Because the plain language of former RCW 74.04.060(4) does not prevent disclosure of lists or names of any individuals when they are sought for political purposes, but rather only prevents the disclosure of any lists and names of applicants and recipients of public assistance, SEIU 925's argument fails. Accordingly, we hold that former RCW 74.04.060(4) is not an "other statute" precluding the disclosure of provider information under the PRA.[12]

---

[12] Because we hold that former RCW 74.04.060(4) does not prohibit disclosure of names of providers, we need not address whether the Foundation sought lists or names of providers for political purposes.

No. 49726-3-II

IV.  INJUNCTION PROPERLY DENIED

As explained above, in order to obtain a PRA injunction, a party must prove that an exemption applies.  *Ameriquest*, 177 Wn.2d at 486.  Only if an exemption applies does a court address whether an injunction is appropriate under the statutory requirements: whether disclosure would not be in the public interest and would substantially and irreparably damage a person or vital government functions.  *Lyft*, 190 Wn.2d at 791.

Because here, RCW 43.17.410(1) and RCW 42.56.640 do not apply retroactively and former RCW 74.04.060(4) is not an "other statute" exemption under the PRA, no exemption applies to prohibit the Department from releasing the records. Because no exemption applies, we do not reach the question of whether an injunction is appropriate in this case.

CONCLUSION

Because RCW 43.17.410(1) and RCW 42.56.640 do not apply retroactively and because former RCW 74.04.060(4) is not an exemption under the PRA, the trial court did not err in denying SEIU's request for injunction.  We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Sutton, J.

18

No. 49726-3-II

Lee, A.C.J. (concurrence) — I concur with the majority's holding that the exemptions created by RCW 42.56.070(9) and RCW 43.17.410, enacting voter approved Initiative 1501 (I-1501), do not apply retroactively to a public records request made *prior* to the voters approving I-1501. However, I write separately to point out that whether RCW 42.56.070(9) and RCW 43.17.410 apply to a public records request made after Washington voters approved I-1501, but before the enactment of RCW 42.56.070(9) and RCW 43.17.410, is beyond the scope of the issue in this appeal.

_____, A.C.J.
Lee, A.C.J.